954 F.2d 1075
 SELECTIVE INSURANCE COMPANY OF SOUTHEAST, et al.,
Plaintiffs-Counter Defendants-Appellees,
v.
J.B. MOUTON & SONS, INC., Defendants-Third Party Plaintiff
and Counter Plaintiff-Appellant,
and
Northern Insurance Company of New York, et al., Third Party
Defendants-Appellees.
 No. 91-4082.
 United States Court of Appeals,
Fifth Circuit.
 March 4, 1992.
Rehearing Denied March 31, 1992.
 
 Richard T. Simmons, Thomas M. Richard, Hailey, McNamara, Hall, Larmann & Papale, Metairie, La., for defendant-third party plaintiff and counter plaintiff-appellant.
 Randall L. Kleinman, Hulse, Nelson & Wanek, New Orleans, La., for Valley Forge Ins.
 Appeal from the United States District Court for the Western District of Louisiana.
 Before REYNALDO G. GARZA, GARWOOD and DUHE, Circuit Judges.
 DUHE, Circuit Judge:
 
 
 1
 The scope of an insurer's duty to defend determines this appeal. Third-Party Defendant/Appellee Valley Forge Insurance Company is a comprehensive general liability insurer of Third-Party Plaintiff/Appellant J.B. Mouton & Sons, Inc., a general contractor. Some of Mouton's other liability insurers (now settled out of the case) brought this declaratory action against Mouton claiming that they were not obligated to defend Mouton from claims asserted in a previous suit called the "Dupuis litigation." After making demand on its insurers to defend, Mouton paid its own costs of defense in the Dupuis litigation.
 
 
 2
 In this action, Mouton counterclaimed against its insurers, seeking attorneys' fees and expenses, and impleaded Valley Forge. On cross motions for summary judgment, the district court denied fees to Mouton and granted the relief sought by the insurers. Finding the insurer had no duty to defend, we affirm.
 
 I. Standard of Review
 
 3
 In reviewing the summary judgment, we apply the same standard of review as did the district court. Waltman v. International Paper Co., 875 F.2d 468, 474 (5th Cir.1989). Summary judgment is appropriate if the record discloses "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).
 
 
 4
 The duty to defend is broader than the duty to indemnify under Louisiana insurance law. Jensen v. Snellings, 841 F.2d 600, 612 (5th Cir.1988). The duty to defend is determined solely by a comparison of the allegations of the complaint against the insured with the terms of the policy. Id. (citing Vaughner v. Pulito, 804 F.2d 873, 876-77 (5th Cir.1986)) (applying Louisiana law). If the allegations "unambiguously and absolutely" exclude coverage under the policy, the insurer is relieved of the duty to defend. Vaughner, 804 F.2d at 877.
 
 II. The Policy
 
 5
 The Valley Forge policy is denominated a "Comprehensive General Liability Policy." It covers "property damage to which this insurance applies, caused by an occurrence...." Ex.C to Valley Forge Mot.Summ.J. (1 R. 100) (emphasis in the policy). Unless there is physical injury to or destruction of tangible property, or loss of use of tangible property caused by an occurrence during the policy period, there is no "property damage" as defined in the policy. The district court found that the claims arose from injury to intangible property and were therefore excluded. With the additional observation that the only alleged injury during the policy period was to intangible property, we agree and affirm. "Property damage" is defined in the policy as follows:
 
 
 6
 (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.
 
 
 7
 "Occurrence" is defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."
 
 III. The Dupuis Claims
 
 8
 The Dupuis plaintiffs were three brothers and a trustee for trusts benefitting the Dupuis brothers' minor children (hereinafter "the Dupuis"). The Dupuis complaint alleged that they formed a partnership with other defendants (Thomas Becnel, a real estate developer, and his wholly owned corporation) to build an office building on the Dupuis' land. The Dupuis contributed their land, and the developer contributed his expertise to the partnership in exchange for their respective partnership interests. Dupuis 2d Am.Compl. pp 7, 12, 13; Ex.A to Valley Forge Mot. [hereinafter referred to by p only]. The real estate was eventually turned over to the mortgagee by dation en paiement[1] to avoid foreclosure (p 23).
 
 
 9
 The Dupuis complaint alleged that defendants Becnel and Mouton committed various wrongs resulting in the loss of their land and future income from the operation or sale of the partnership property. They also asserted securities fraud, RICO claims, and various state law claims. Mouton urges that the Dupuis complaint described loss of land and income and the loss of use of land and income, both of which are "tangible property," within the coverage of the Valley Forge policy. We disagree.
 
 
 10
 IV. No Physical Injury to Tangible Property During the Policy Period
 
 
 11
 The first type of property damage covered by the policy is "physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom." The policy period was from September 30, 1986, to September 30, 1987. Mouton argues that the Dupuis complaint asserted physical injuries to tangible property in the allegations of loss of the land, alteration of the land by construction of the office building, and loss of income.A. The Land
 
 
 12
 Mouton first argues that loss of land alleged in the Dupuis complaint constituted a loss of tangible property. The complaint specifically asserts that the Dupuis owned the land in 1980 (p 5), that Becnel approached them with a plan to develop it through a partnership in which Becnel's wholly owned corporation would be the general partner (pp 6-12), that based on Becnel's representations they formed a partnership in 1981 and transferred the land to the partnership in return for their limited partnership interests pursuant to the partnership agreement (pp 11-13), that defendants Becnel and Mouton built and leased an office building on the land (p 14), that Becnel (apparently on behalf of the general partner, for the partnership) dationed the property to the lender to avoid a foreclosure in 1988 (p 23), that as a result of the defendants' conduct, plaintiffs lost their land (p 24), and that Mouton aided and abetted Becnel in the wrongful conduct (pp 30, 32).
 
 
 13
 The Dupuis complaint indeed describes wrongful conduct by the defendants resulting in the initial transfer of their land to the partnership (pp 13, 27, 30, 32), in the allegations that defendants intentionally or recklessly made false and misleading statements and omitted material facts (pp 25-27, 29, 38, 42, 70), and aided and abetted each other in a scheme to sell the investment (pp 30, 32-33, 45) and to defraud plaintiffs (p 76).
 
 
 14
 This loss does not fall within the first type of covered property damage, however, for two reasons. First, Mouton has not suggested how a transfer of the land can constitute a "physical injury to or destruction of" the land. Second, a physical injury or destruction must occur during the policy period for the damage[2] to be covered. The complaint shows that the partnership was formed in 1981 and that the land was transferred to the partnership pursuant to the partnership agreement. The complaint unambiguously precludes the possibility that this "loss" of the land (its transfer to the partnership) occurred during the policy period, which began some five years later.
 
 
 15
 Mouton argues that absent an allegation that the partnership agreement was filed with the secretary of state, it is not clear from the complaint that the partnership rather than the partners (the Dupuis) owned the land.[3] We disagree.
 
 
 16
 The insurer's duty to defend is determined solely from the plaintiffs' pleadings and the policy, without consideration of extraneous evidence. Jensen, 841 F.2d at 612; see also Alombro v. Salman, 536 So.2d 764, 767 (La.Ct.App.1988) (duty is measured by allegations regardless of known or ascertainable facts). The Dupuis complaint alleged that the plaintiffs transferred their land to the partnership (p 13). Valley Forge may rely on that allegation and was under no duty to check the public records to determine whether the property was transferred to the partnership as the complaint alleged.
 
 
 17
 Mouton also suggests that the construction of an office building on the land constituted a "physical injury" to the land. The complaint unambiguously establishes that construction financing was obtained after the transfer of the land to the partnership (p 14). When the Dupuis transferred the land to the partnership in exchange for limited partnership interests, they no longer owned real estate but rather owned their interests in the partnership (pp 12-13).
 
 
 18
 If the construction of the building was after the transfer of the land to the partnership, the only property belonging to the Dupuis that was affected was their partnership interests. Accordingly, the next question before us is whether a partnership interest is tangible property. The Louisiana Supreme Court has found that "tangible" property corresponds to the Louisiana civilian concept of "corporeal" property. City of New Orleans v. Baumer Foods, Inc., 532 So.2d 1381, 1383 (La.1988) (interpreting city tax on "tangible personal property"). Under Louisiana law, a partnership is a juridical person and the right to an interest in a juridical person is incorporeal. See La.Civ.Code Ann. arts. 473 (West 1980), 2801 (West Supp.1992). Injury to a partnership interest is injury to intangible property and therefore is not covered under the policy.
 
 
 19
 Moreover, even if construction of a building began while the Dupuis still owned the land, Mouton's argument that such construction suggests "physical injury" to tangible property still fails. Mouton relies on Lindsay Drilling & Contracting v. United States Fidelity & Guaranty Co., 208 Mont. 91, 676 P.2d 203 (1984), which held that alteration of core drilling samples by salting them with gold constituted a physical injury to the tangible core sample, even though the gold was obviously valuable. We are not bound by Lindsay and in any case find it inapposite. The addition of gold was detrimental to claimants because the value of the core sample was its usefulness as an indicator of the economic feasibility of mining. This value was not enhanced by adding gold, because the alteration gave a false reading to the claimants on whether to incur production costs of mining. Because the construction of an office building on a tract of land is not comparable, we find Lindsay inapplicable to this case.
 
 
 20
 Finally, the alleged "loss" of the land through the dation in 1988 occurred after the policy period and therefore could not constitute property damage during the policy period. Furthermore, neither deeding land to a partnership, constructing a building on land, nor giving of land in payment suggests "physical injury to or destruction of tangible property" sufficient to trigger a duty to defend.
 
 B. The Income
 
 21
 Mouton also asserts that the Dupuis pleadings complained of "physical injury to ... tangible property" in the allegations that the plaintiffs lost all rights to future income from the operation or sale of partnership property.
 
 
 22
 The right to income or profit from real estate is property of the real estate's owner, namely, the partnership. The alleged damage to the Dupuis' property was devaluation of their interests in the partnership by making that investment less profitable (p 19 (distribution never received), p 24 (loss of income), pp 74, 77, and 81 (loss of investment, loss of profits, and loss of income from partnership)). Injury to such partnership interests is damage to incorporeal property. See Baumer Foods; La.Civ.Code Ann. arts. 473, 2801. The Dupuis complaint does not allege "physical injury to or destruction of tangible property ... or the loss of use ... resulting therefrom."
 
 
 23
 V. No Loss of Use of Tangible Property Caused by an Occurrence
 
 
 24
 The second type of property damage covered by the policy is "loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period." Mouton asserts that, even if the land was not injured or destroyed, the loss of use of the land[4] was nevertheless covered within this second type of "property damage," because such a loss of use was caused by an occurrence.
 
 
 25
 Under this second type of covered property damage, there must be an "occurrence" during the policy period, regardless of when the loss of use takes place. According to the policy, "occurrence" means "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."Mouton suggests that numerous occurrences were alleged.[5] As much as the wrongs may have hurt the partnership, the only property of the Dupuis these wrongs could injure is the value of their partnership interests--intangible property. To constitute an occurrence, an act or condition must result in property damage as defined in the policy, which includes loss of use of tangible property only.
 
 
 26
 Even from the standpoint of the partnership, the alleged injuries are to intangible rather than tangible property. The complaint alleges lost income and rent, which are claims of the partnership (pp 19-20) (diversion of income from partnership and diversion of a tenant from partnership's building). Corporeal things have a body and can be touched or felt, and incorporeal (or intangible) things "have no body, but are comprehended by the understanding, such as the rights of inheritance, servitudes, obligations, and right of intellectual property." La.Civ.Code Ann. art. 461 (West 1980). The claims of lost rent and income are incorporeals and therefore intangibles.
 
 
 27
 Mouton would have this Court expand the definition of "tangible" property to include the hope of future income by extending the holding of Dietrich v. Travelers Insurance Co., 551 So.2d 64 (La.Ct.App.1989), cert. denied, 559 So.2d 121 (La.1990). Dietrich, involving the question whether a firm's liability for failure to enroll an employee under a disability plan was an obligation for "property damage," stated, "Although the right to the benefits payable under the health and disability policy may be an intangible right, the actual benefits which would have been payable under the policy had Ms. Dietrich been properly enrolled in and covered by the policy constitute tangible property, i.e. money." Id. at 66 (emphasis in original).
 
 
 28
 We will not expand Dietrich 's holding on "actual benefits" to every anticipated hope of future income. We are guided instead by Traigle v. Ami, Inc., 280 So.2d 858 (La.Ct.App.1973), application not considered, 282 So.2d 719 (La.1973). Traigle addressed the specific issue pertinent to the claim about the diverted tenant--the right to future rent--and held that the right to receive rental payments is an incorporeal right. Traigle, 280 So.2d at 860. Following Traigle, we conclude that the loss of future rental payments is damage to intangible property.
 
 
 29
 We find other anticipated profits or the hope of future income from the business venture more analogous to the anticipated rents in Traigle than to "actual benefits which would have been payable" under the health policy dealt with in Dietrich. Accordingly, such other claims of loss of future income are also claims of damage to intangible property. Even if the partnership's property is considered, the Dupuis plaintiffs asserted no covered claim for loss of use of tangible property, because the only alleged damages during the policy period were injuries to and loss of use of intangible property.
 
 VI. Conclusion
 
 30
 Comparing the allegations of the Dupuis complaint with the terms of the policy, we find that coverage is unambiguously and absolutely excluded. The only tangible property involved was not physically injured or destroyed. All other alleged damages are to intangible rights. Accordingly, Valley Forge had no duty to defend, and the judgment of the district court is
 
 
 31
 AFFIRMED.
 
 
 
 [1]
 Literally, "giving in payment." Louisiana law provides this device for payment of a debt by delivery of a thing. (See La.Civ.Code Ann. art. 2655)
 
 
 [2]
 Similarly, for "the loss of use ... at any time resulting [from the injury or destruction]" to be covered under this first type of property damage, the injury or destruction must have occurred during the policy period. (The second type of loss of use, i.e., of property not physically injured or destroyed, is discussed later.)
 
 
 [3]
 Louisiana law provides,
 As to third parties, the individual partners shall be deemed to own immovable property acquired in the name of the partnership until the contract of partnership is filed for registry with the secretary of state as provided by law.
 La.Civ.Code Ann. art. 2806 (West Supp.1992).
 
 
 [4]
 In view of our holding that the loss of future income is an intangible (and therefore not covered), the loss of use of that income is not covered either. Loss of use of only tangible property is covered
 
 
 [5]
 The alleged wrongs affecting income or profitability of the investment included inflating contract prices for the benefit of Becnel, or Mouton and Becnel mutually (pp 16, 17); wrongfully diverting income that plaintiffs would have otherwise received (pp 18-19); secretly negotiating the relocation of a profitable tenant in a scheme to enrich Mouton and Becnel to the detriment of the partnership (p 20); submitting sham purchase offers to plaintiffs to force them to waive preferential distribution rights (p 21); threatening plaintiffs with diversion of a potential purchaser to another buying opportunity that would benefit Becnel alone (p 22); and using the partnership as a facade for self-dealing (pp 23, 54)