IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-31124
Summary Calendar

_____


OAK RIDGE PARK, INC.; ET AL.,

                                                    Plaintiffs,

OAK RIDGE PARK, INC.,

                                          Plaintiff-Appellant,

                              versus

SCOTTSDALE INSURANCE COMPANY; ET AL.,

                                                    Defendants,

SCOTTSDALE INSURANCE COMPANY;
UNITED FIRE AND CASUALTY COMPANY,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court for the
Eastern District of Louisiana
USDC No. 98-CV-3348-N
_____
September 29, 2000

Before JOLLY, JONES, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

    This appeal presents an insurance coverage case under

Louisiana law.  The plaintiffs, Quarter House Oak Ridge Park, Inc.

_____

    [*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

("ORP") and Quarter House Home Owners' Association ("Quarter House") seek review of the district court's grant of summary judgment for the defendants, Scottsdale Insurance Company ("Scottsdale") and United Fire and Casualty Company ("United"), which dismissed the plaintiffs' bad faith claims.[1]  Specifically, the plaintiffs argue that the district court erred in concluding that the underlying lawsuits against the plaintiffs did not fall within the insurance coverage provided by the defendants.  We find no error on the part of the district court and affirm.

A

The case has its genesis in two separate lawsuits filed against the plaintiffs.  The first suit was filed by Louisiana Acorn Fair Housing (the "Acorn" suit).  It alleged intentional discrimination  in violation of the Fair Housing Act, 42 U.S.C. § 3601, et seq., and the Louisiana Open Housing Act, La.Rev.Stat. § 51:2601., et seq.  Specifically, Acorn alleged that ORP "willfully," "maliciously," and "intentionally" committed acts of discrimination (based on race, religion, familial status and national origin) in connection with the sale of real estate.[2]  The second suit was filed by Richard J. Danenhower, a former field

_____

[1]The plaintiffs do not seek review of the district court's grant of summary judgment for the defendant, Coregis Insurance Company ("Coregis").

[2]The Acorn suit was settled prior to trial.

2

marketing manager for ORP. It alleged violations of the Fair Housing Act and the Louisiana Open Housing Act similar to those alleged in the Acorn litigation. Specifically, Danenhower alleged that he was required to train employees to carry out discriminatory policies by presenting tours to a select group of "qualified" prospective buyers based on race, religion, handicap, national origin, and familial status. Because of these illegal practices, Danenhower alleged, he was forced to resign.[3] Danenhower sought damages for loss of wages, humiliation, embarrassment, emotional distress, mental anguish and ridicule.[4] In both instances, the defendants denied coverage to ORP and Quarter House.

On November 10, 1998, ORP and Quarter House filed the instant suit against Scottsdale, United, and Coregis. The plaintiffs alleged that its insurers wrongfully denied them a defense and coverage in both the Acorn and Danenhower litigation.[5] Following a hearing, on September 17, 1999, the district court granted

---

[3]Additionally, Danenhower alleges that he was slandered by ORP in a public statement issued by ORP in response to a television broadcast showing Danenhower instructing a putative marketing trainee to discriminate in accordance with ORP's "policies."

[4]Following removal to federal court, Danenhower's suit was dismissed for lack of standing to pursue the federal claims, and declination to exercise pendant jurisdiction over the state law claims. Subsequent to the district court's dismissal, Danenhower re-filed in state court. That state court action is still pending.

[5]The bad faith claims stemming from the Danenhower litigation are limited to the federal action that was dismissed. No claims are brought with respect to the ongoing state court action.

3

summary judgment for the insurers. The plaintiffs filed a timely notice of appeal.

B

After consideration of the briefs and the record, we hold that the district court did not err in granting summary judgment for the defendants. Louisiana law is clear: "The insurer's duty to defend is determined solely from the plaintiffs' pleadings and the policy, without consideration of extraneous evidence." Selective Ins. Co. of Southeast v. J.B. Mouton & Sons, Inc., 954 F.2d 1075, 1078 (5th Cir. 1992)(citing Jensen v. Snellings, 841 F.2d 600, 612 (5th Cir. 1988); Alombro v. Salman, 536 So.2d 764, 767 (La.Ct.App. 1988)). The allegations contained in the complaint are to be liberally construed and the rights of the insured are to be deemed paramount. See Jensen, 841 F.2d at 612. However, if after examining the allegation in the complaint, coverage under the policy is precluded, the insurer is relieved of its duty to defend. See Resolution Trust Corp. v. Ayo, 31 F.3d 285, 293 (5th Cir. 1994)(citing Jensen, 841 F.2d at 612).

Turning first to the coverage provided by the Scottsdale policy, we think that the district court correctly concluded that in the Acorn litigation, the acts alleged against the plaintiffs were acts that were "intended or expected"; thus, they do not "fall under the definition of 'occurrence' contained in the policy." Additionally, the plaintiffs have failed to identify any property

4

damages, bodily injuries, or personal injuries that are alleged by the Acorn plaintiffs that arguably fall within the policy. Finally, with respect to the Danenhower litigation, all of the claims arose out of employment-related policies or acts that were "unambiguously precluded under the Scottsdale employment-related policy exclusion." Thus, the district court was correct in concluding that the plaintiffs were not entitled to coverage under the Scottsdale policy.

With respect to the United policy, coverage in the Acorn litigation was denied by United for the same reasons that it was denied by Scottsdale under its policy--the policy excluded coverage for intentional acts, which were the only acts alleged in the Acorn litigation. Further, as in the Scottsdale policy, the United policy contained an exclusion for bodily injury and property damage caused by employment-related practices. As far as the Danenhower suit is concerned, the record is bereft of any evidence indicating that the suit was ever tendered by the plaintiffs to United for defense. Even assuming, however, that United had "constructive notice" of the Danenhower suit, as the plaintiffs argue, coverage was expressly excluded by the "employment-related practices exclusion." Thus, the district court was correct in concluding that "United bore no duty to defend ORP in the Danenhower suit."

The judgment of the district court is therefore

A F F I R M E D.

5