536 So.2d 764 (1988)
Lloyd P. ALOMBRO, Jr.
v.
Samir SALMAN.
No. 88-CA-449.
Court of Appeal of Louisiana, Fifth Circuit.
December 14, 1988.
Bagert & Trinchard, James L. Trinchard, Susan H. Lafaye, New Orleans, for Audubon Ins. Co., third-party defendant/appellant.
Lowe, Stein, Hoffman & Allweiss, Mitchell J. Hoffman, Max J. Cohen, New Orleans, for Samir Salman, third-party plaintiff/appellee.
*765 Before CHEHARDY, C.J., and KLIEBERT and GAUDIN, JJ.
CHEHARDY, Chief Judge.
This is an appeal of a summary judgment on a preliminary matter in a lawsuit arising out of a fistfight between plaintiff and defendant. The defendant's liability insurer, which claims coverage for the fistfight is excluded under the "intentional acts" exception of the policy, was ordered by the trial court to provide its insured with a defense. The insurer has appealed.
Lloyd P. Alombro, Jr., filed suit against Samir Salman, alleging that on February 15, 1983, as he was watching a Mardi Gras parade in Metairie, Louisiana, "suddenly and without provocation" defendant attacked him and beat him about the head and face. Plaintiff alleged further that, as a consequence of "said unlawful, unprovoked and vicious assault and beating inflicted upon petitioner by defendant," plaintiff sustained injuries and other damages in the total amount of $335,000. By supplemental and amending petition Alombro added Audubon Insurance Company, Salman's homeowners insurer, as a defendant.
Salman answered with a general denial and asserted the affirmative defenses of contributory and comparative negligence, assumption of the risk, provocation, and self-defense. Audubon filed a separate answer, denying coverage "pursuant to the exclusions contained in the policy of insurance for intentional acts of its named insured."
Thereafter Salman filed a third-party demand against Audubon. He asserted that he is entitled to full coverage under the insurance policy, that Audubon has a contractual duty to provide counsel for his defense, and that Audubon has refused to do so, requiring him to retain counsel at his own expense. He prayed Audubon be cast in judgment for his legal fees and court costs, as well as for contribution and/or indemnification of Salmen in the event he is found liable to plaintiff.
In support of his claim, he cited the following language in Section II of the policy, under Coverage EPersonal Liability:
"This Company shall have the right and duty, at its own expense, to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent * * *."
Audubon answered the third-party demand by general denial, pleading the terms and conditions of the policy.
Salman then filed a motion for summary judgment, seeking a judgment ordering Audubon to provide a defense to him by compensating his attorneys on a monthly basis in order to protect his interest in the suit. In support of the motion for summary judgment, Salman attached his own affidavit, in which he stated that he had entered into a contract of insurance with Audubon, that the policy was in effect on the date of the alleged incident between himself and Alombro, that Audubon had refused to defend him, that as a result of that refusal he had retained counsel at his own expense, and that he is unable to make current payments to his attorneys for the fees and expenses incurred in defending him.
In opposition to the motion, Audubon filed a memorandum discussing the clause of the policy upon which Audubon bases its coverage rejection. Audubon also filed, as exhibits, copies of documents relating to Salman's guilty plea to simple battery charges arising out of the fistfighting incident and a copy of Salman's statement, taken by an insurance adjuster. Audubon asserted these documents established that Salman's act was intentional.
The policy language upon which Audubon relies is quoted in its memorandum in opposition to the motion for summary judgment as follows:[1]
*766 "This policy does not apply:
1. Under Coverage EPersonal Liability and Coverage FMedical Payments to Others:
* * * * * *
f. to bodily injury or property damage which is either expected or intended from the standpoint of the insured."
The trial judge granted summary judgment in favor of Salman and ruled that Audubon would be required to provide a defense for Salman, stating, "An insurer's obligation to defend suits against its insured is broader than its liability for damage claims."
As the trial court pointed out, generally an insurer's obligation to defend suits against its insured is broader than its liability for damage claims. Meloy v. Conoco, Inc., 504 So.2d 833 (La.1987); American Home Assurance Company v. Czarniecki, 255 La. 251, 230 So.2d 253 (1969); Benoit v. Fuselier, 195 So.2d 679 (La.1967).
An insurer's duty to defend suits brought against its insured is determined by the allegations of the injured plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage. Meloy v. Conoco, Inc., supra. A cause of action under a liability insurance policy accrues when the liability attaches. However, an insurer's duty to defend arises whenever the pleadings against the insured disclose a possibility of liability under the policy. Id.
"Thus, if, assuming all the allegations of the petition to be true, there would be both (1) coverage under the policy and (2) liability to the plaintiff, the insurer must defend the insured regardless of the outcome of the suit. Additionally, the allegations of the petition are liberally interpreted in determining whether they set forth grounds which bring the claim within the scope of the insurer's duty to defend the suit brought against its insured. * * *"
Benoit v. Fuselier, supra, at 682.
Given the allegation that Salman attacked Alombro "without provocation," it is clear on the face of the petition that Salman would be liable to the plaintiff. The question of whether those allegations establish coverage under the policy, however, is the real issue.
In Pique v. Saia, 450 So.2d 654 (La. 1984), our Supreme Court examined a policy provision containing the same language as the provision here. In that case the court pointed out, "An expected injury may be one which is highly likely, probable or substantially certain to happen." Id. at 655. Thus, the court said, the exclusion could be interpreted to bar recovery for either intentional and negligent injuries or only an intentional injury. Accordingly, in accordance with the principle that ambiguity in an instrument is resolved against the draftsman, the court construed the policy language to exclude coverage only for intentional injuries.
The court then defined "intentional injury":
"An injury is intentional, i.e., the product of an intentional act, only when the person who acts either consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or knows that that result is substantially certain to follow from his conduct, whatever his desire may be as to the result. * * *"
Id., at 655.
Applying this reasoning, we examine the allegations of the petition in the case at bar to determine whether those allegations "unambiguously exclude coverage"that is, whether when liberally interpreted they unambiguously allege that Salman either "consciously desired the physical result of his act" or "knew that that result was substantially certain to follow from his conduct." *767 We conclude these allegations do not exclude coverage. As mentioned above, the petition alleges that Salman suddenly and without provocation attacked Alombro and beat him about the head and face, that Alombro suffered injuries as a result, and that the alleged attack was "unlawful, unprovoked and vicious." These allegations, however, do not establish in themselves that Salman either consciously desired the physical result of his act or that he knew the result was substantially certain to follow. Those conclusions can be interpolated only by referring to pleadings and documents outside the allegations of the petition. See Guilbeau v. Roger, 443 So.2d 773, 776 (La.App. 3 Cir.1983), writ denied 446 So.2d 1224.
The insurer's duty to defend is measured by the allegations of the petition even though the insurer may have determined there was no coverage on the basis of known or ascertainable fact. Benoit v. Fuselier, supra, at 683.
If the allegations of the petition are sufficient to impose a duty to defend the insured upon the insurer, yet the insurer fails or refuses to do so, then its refusal to provide that defense renders it liable for the expenses which the insured is compelled to incur in defending the action, including reasonable attorney's fees. Champion v. Farm Bur. Ins. Co., 352 So.2d 737, 741 (La.App. 3 Cir.1977), writ refused 354 So.2d 1050 (La.1978).
In Clemmons v. Zurich General Accident & Liabil. Ins. Co., 230 So.2d 887 (La.App. 1 Cir.1969), the court pointed out that an insurer in this dilemma has two courses of action available: The insurer may demand the insured execute a non-waiver agreement whereby the insurer agrees to defend and the insured recognizes the right of the insurance company to question coverage; or the insurer may bring an action against the insured for a declaratory judgment on the question of coverage.
"Our courts have recognized that an insurer may deny coverage and yet furnish its insured with a defense without subjecting itself to liability. * * * This in essence would satisfy the non-waiver requirement mentioned above. Further, an insured who hires an attorney to litigate the issue of coverage alone is not entitled to recover for attorney fees. * * *" Id., at 895.
Because the issue raised by Salman's motion for summary judgment was the insurer's duty to defend rather than the coverage question, the trial court correctly ruled in favor of Salman.
For the foregoing reasons, the judgment of the district court is affirmed. Costs of this appeal are assessed against the appellant.
AFFIRMED.
NOTES
[1] This language appears nowhere on the copy of the policy contained in the record lodged with this court. We have been informally advised by the district court clerk's office, however, that because the original record could not be located, the record provided to this court was copied from a microfilm copy. It appears that the portion of the policy listing the exclusions must have been omitted inadvertently during the microfilming process.

Because the trial judge had the original policy before him in deciding the case and there is no dispute between the parties that the policy contains such an exclusion, we have relied on the language provided us by the appellant to establish the wording of the exclusion at issue.