633 So.2d 790 (1994)
WESTERN WORLD INSURANCE COMPANY, INC.
v.
PARADISE POOLS & SPAS, INC.
No. 93-CA-723.
Court of Appeal of Louisiana, Fifth Circuit.
February 23, 1994.
*791 Gregory J. McDonald, Bienvenu, Foster, Ryan & O'Bannon, New Orleans, for plaintiff/appellant.
John H. Wells, New Orleans, for defendant/appellee.
Before KLIEBERT, WICKER, and GOTHARD, JJ.
WICKER, Judge.
This appeal arises from an action for declaratory judgment by Western World Insurance Company, Inc. against Paradise Pools & Spas, Inc., Candy Riffel and Dennis Riffel, in which the trial court declined to grant declaratory relief and dismissed the petition for declaratory judgment. We reverse and render.
The Riffels sued Paradise Pools for breach of a contract for construction of a swimming pool, alleging that Paradise "failed to construct the swimming pool in a competent and workmanlike manner, failed to use high quality materials in said construction, failed to complete the job, and/or failed to deliver all equipment and accessories in accordance with the contract," and that the swimming pool developed apparent defects including "large cracks in the pool base (foundation) and plaster, as well as cracks in the patio *792 decking surrounding the pool." They also alleged the contract was intended to gratify a nonpecuniary interest and that they suffered damages arising from "inconvenience, mental distress, and other nonpecuniary losses." Riffel v. Paradise Pools, No. 365-183, 24th Judicial District Court for the Parish of Jefferson.
As a result of the Riffel suit, Paradise Pools demanded that Western World, its general liability insurer, provide insurance coverage and defense of the claim. Western World, which is not a party to the Riffel suit, filed the instant suit, seeking a declaratory judgment regarding the coverage questions and its duty to defend in the Riffel suit.
Western World contends the damages sought by the Riffels are not covered by its policy because (1) they are claims excluded by the "Completed Operations Hazard" and "Products Hazard" exclusion, (2) there was no "occurrence" as defined by the policy, and (3) because the policy excludes damage to the insured's work or product and damages arising out of contractual liability.
Paradise Pools contends that the damage to the pool was caused not by faulty workmanship, but by differential settlement due to latent soil defects which constitute an "occurrence" as defined by the policy. Paradise denies any liability for the damage to the pool, but argues that Western World owes it a defense and indemnification in the event it is found liable.
The trial court declined to decide these issues outside of the Riffel suit, stating:
The Court has reviewed this record at length. The Court has read and reread the insurance contract between the parties. This policy is ambiguous and confusing. Under Louisiana law, doubts, uncertainties, or ambiguities in insurance policies are to be resolved in favor of the insured and against the insurer. In the case of ambiguity, the construction of an insurance policy will be adopted which is most favorable to the insured. This rule applies with particular force to the interpretation of exclusion provisions in an insurance policy. [Citations omitted.]
The Court believes that the insurance company clearly has a duty to defend Paradise Pools and Spas under the terms of the insurance policy. This Court feels that the case needs to proceed to trial on the merits to determine indemnity and coverage issues.
For the reasons assigned above, the declaratory judgment action is denied and dismissed.
(Reasons for Judgment, R. 98, 100.)
The judgment itself, however, simply denied and dismissed the petition for declaratory judgment, without mentioning the issues of coverage and defense.
Western World appeals, specifying that the trial court erred (1) in finding the policy ambiguous, (2) in determining that Western World owed a duty to defend, (3) in not determining coverage in the declaratory judgment action, and (4) in not finding the Riffels' claims against Paradise excluded.
Ambiguity of the policy and duty to defend are issues that were addressed in the trial court's reasons for judgment but were not mentioned in the judgment itself. Appeals are taken from adverse judgments, not from opinions. Keys v. Box, 476 So.2d 1141 (La.App. 3rd Cir.1985); see La.C.Civ.P. arts. 2082, 2083.
The trial court's written reasons, while defining and elucidating the principles upon which he is deciding a case, form no part of the official judgment he signs and from which appeals are taken. La.C.Civ.P. art. 1917, 1918.
Sullivan v. Gulf States Utilities, 382 So.2d 184, 186 (La.App. 1st Cir.), writ denied, 384 So.2d 447 (La.1980). Where there is a conflict between the reasons for judgment and the judgment, the judgment prevails. Watts v. Aetna Cas. and Sur. Co., 574 So.2d 364 (La.App. 1 Cir.1990). Thus, although the trial judge discussed coverage and defense in his reasons for judgment, his failure to mention them in the judgment itself and his outright dismissal of Western World's petition mean that the judgment did not determine the issues of coverage and defense.
The trial judge plainly intended to rule on the issue of duty-to-defend, while leaving the *793 coverage issue for determination at the trial of the Riffel suit. In so doing, he apparently assumed that Western World was a defendant or third-party defendant in the Riffel case. In fact, Western World is not a party to the other suit; thus, although the facts that determine policy coverage will be elicited at the trial of the Riffels' case, the legal issues of defense and coverage cannot be determined therein. Further, under the wording of the judgment in this case, there is no enforceable determination that Western World has a duty to defend Paradise Pools.
Thus, the initial question is whether the trial court erred in declining to grant declaratory relief and in dismissing the suit for declaratory judgment.

Right to Declaratory Relief
Courts may entertain an action for declaratory judgment when appropriate. La. C.Civ.P. art. 1871, 1872. Although the trial court within its sound discretion may refuse to render a declaratory judgment where such a judgment would not terminate the uncertainty or controversy giving rise to the proceeding, the court must render a declaratory judgment where it would terminate the uncertainty or controversy giving rise to the proceeding. Morial v. Guste, 365 So.2d 289 (La.App. 4th Cir.1978), writ denied, 365 So.2d 1375; La.C.Civ.P. arts. 1875, 1876.
The very purpose of the declaratory judgment procedure is to remove uncertainty in existing (as opposed to hypothetical) situations. While courts should not render advisory opinions, a person is entitled to relief by declaratory judgment when his rights are uncertain or disputed in an immediate and genuine situation and the declaratory judgment will remove the uncertainty or terminate the dispute. When a declaratory judgment is thus appropriate, neither the existence of another adequate remedy nor the fact that further relief has been or can be claimed will preclude the court from rendering judgment declaring the petitioner's rights or status. La.C.Civ.P. art. 1871.
In re P.V.W., 424 So.2d 1015, 1022 n. 10 (La.1982).
A declaratory judgment that Western World owes a duty to defend would remove at least part of the uncertainty that gave rise to this proceeding, while a determination that there is no coverage would terminate the litigation as to Western World. The questions of whether Western World has a duty to defend Paradise Pools and whether the policy covers the damages sought by the Riffels cannot otherwise be determined, since Western World is not party to Riffel v. Paradise Pools. Accordingly, we conclude that the trial judge erred in dismissing the declaratory judgment action and we will consider its merits.

Duty to Defend
A liability insurer's duty to defend suits brought against its insured is determined by the allegations of the plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage. Ellis v. Transcontinental Ins. Co., 619 So.2d 1130 (La.App. 4th Cir.1993). The insurer's obligation to defend suits against its insured is broader than its liability for damage claims; the insurer's duty to defend arises whenever the allegations against the insured disclose the possibility of liability under the policy. Alombro v. Salman, 536 So.2d 764 (La.App. 5th Cir.1988). The duty to defend is measured by the allegations of the petition even though the insurer may have determined that there was no coverage on the basis of known or ascertainable fact. Id.
The trial judge concluded that the language of the insurance policy is ambiguous, so that there is a question of whether coverage is unambiguously excluded as Western World contends. Presumably his conclusion was based on Paradise Pools' argument that "occurrence" as used in the policy is ambiguous.
The policy provides that the company will pay on behalf of the insured "all sums which the insured shall become legally obligated to pay as damages" because of bodily injury or property damage "caused by an occurrence." Occurrence is defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property *794 damage neither expected nor intended from the standpoint of the insured."
Although Western World argues that the damage alleged here is not an occurrence within the meaning of the policy, Paradise Pools contends, and we agree, that the definition of occurrence is ambiguous and could be construed to mean the development of cracks in the swimming pool constructed by the insured. However, even if the damages alleged by the Riffels fit within the policy definition of "occurrence" for coverage purposes, we still must determine whether they are excluded by other provisions.
The policy contains exclusions for liability assumed by the insured under any contract, for property damage "to the named insured's products arising out of such products or any part of such product," for property damage to "work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith," and for bodily injury or property damage "included within the completed operations or the products hazard."[1]
The policy defines "Completed Operations Hazard" as
bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned.... "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:
(1) when all operations to be performed by or on behalf of the named insured under the contract have been completed.
(2) when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or
(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.
Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.
"Products Hazard" is defined as
bodily injury and property damage arising out of the named insured's products or reliance upon a representation or warranty made at any time with respect thereto, but *795 only if the bodily injury or property damage occurs away from premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others.
Liability policies are not performance bonds. Breaux v. St. Paul Fire and Marine Insurance Company, 345 So.2d 204, 208 (La.App. 3rd Cir.1977). The completed operations hazard exclusion and the work product exclusion are designed specifically to exclude from coverage any property damage to work performed by a contractor which arises out of either operations or a reliance upon a representation or warranty made with respect thereto, and exclude coverage for defective or faulty workmanship and consequential damages arising therefrom. Hallar Enterprises, Inc. v. Hartman, 583 So.2d 883, 890 (La.App. 1st Cir.1991), and cases cited therein. The policy provisions construed in the Hallar case are identical to the policy language in this case.
In Castigliola v. Department of Community Development, 538 So.2d 1139 (La.App. 5th Cir.1989), this court reviewed provisions identical to those in paragraphs (m) through (o) of the Exclusions section of Western World's policy (see n. 1, supra), found them unambiguous, and applied them to find no coverage in a suit against a contractor for defective construction of a residence.
The allegations by the Riffels clearly allege damages arising from breach of contractual warranties and/or negligent performance. As such, they unambiguously exclude coverage under the policy, given the exclusions set out above. Accordingly, Western World has no duty to defend Paradise Pools in the Riffel suit.

Coverage
At trial of the declaratory judgment action Western World presented expert testimony (from an expert originally hired by the Riffels to establish the cause of the cracks in the pool walls) directed at establishing that the cracks resulted from differential swelling and/or subsidence of the soil.[2] Western World's counsel stated he was attempting to establish that the Riffels contend Paradise Pools was negligent and/or breached its contract (by failing to test the soil before installing the pool) and thus that the damages claimed are excluded from coverage because they relate to defects in the workmanship or material provided by Paradise.
Paradise Pools, on the other hand, attempted to establish that the pool cracked because the Riffels must have drained it improperly.[3] As the trial judge pointed out, that evidence related more to defenses than to the coverage issues.
As discussed above, we find that the policy excludes coverage for contractual liability and for defects arising out of the workmanship or materials by Paradise once the pool was completed. Accordingly, we conclude the policy does not cover the damages sought by the Riffels.

Decree
For the foregoing reasons, the judgment of the district court is REVERSED and judgment is RENDERED in favor of Western World Insurance Company, Inc. and against Paradise Pools & Spas, Inc., Candy Riffel and Dennis Riffel, decreeing that the policy of insurance provided by Western World to Paradise Pools does not cover the damages asserted by the Riffels in Riffel v. Paradise Pools, No. 365-183, 24th Judicial District Court for the Parish of Jefferson, and that Western World is not obligated to provide defense or indemnification to Paradise Pools in that case.
REVERSED AND RENDERED.
NOTES
[1] Under "Exclusions," the policy states:

This insurance does not apply:
(a) to liability assumed by the insured under any contract or agreement ...; but with respect to... property damage occurring while work performed by ... the named insured is in progress, this exclusion does not apply to a warranty that such work will be done in a workmanlike manner;
* * * * * *
(m) to loss of use of tangible property which has not been physically injured or destroyed resulting from
(1) a delay in or lack of performance by or on behalf of the name insured of any contract or agreement, or
(2) the failure of the named insured's products or work performed by or on behalf of the named insured to meet the level of performance, quality, fitness or durability warranted or represented by the named insured;
but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the named insured's products or work performed by ... the named insured after such products or work have been put to use by any person ... other than an insured;
(n) to property damage to the named insured's products arising out of such products or any part of such products;
(o) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;
(p) to ... property damage included within the completed operations hazard or the products hazard[.]
In addition, there is a separate Completed Operations Hazard and Products Hazard exclusion of the policy which states that "such insurance as is afforded by the Bodily Injury Liability Coverage and the Property Damage Liability Coverage does not apply to bodily injury or property damage included within the Completed Operations Hazard or the Products Hazard."
[2] Larry Jones, a structural engineering expert hired by the Riffels, testified that his examination and core samples of the concrete showed that the pool had been subjected to tensile action around its top rim, indicating either improper compaction of fill added before installation of the pool or swelling clays in the soil that exerted differential upward forces.
[3] Warren English, an expert in the repair and renovation of swimming pools, gave his opinion that the cracks were likely caused by the Riffels' failure to pull the plug when the pool was drained to counter the effect of the pool's hydrostatic relief valve by relieving the pressure under the pool.