858 So.2d 22 (2003)
VINTAGE CONTRACTING, L.L.C. and Joseph C. Canizaro
v.
DIXIE BUILDING MATERIAL COMPANY, INC., Maryland Casualty Company and Stiel Insurance Service of New Orleans, Inc.
No. 03-CA-422.
Court of Appeal of Louisiana, Fifth Circuit.
September 16, 2003.
*24 Bryan C. Reuter, Stanley, Flanagan & Reuter, L.L.C., New Orleans, LA, Counsel for Vintage Contracting, L.L.C., Plaintiff/Appellant.
William W. Hall, William W. Hall and Associates, Metairie, LA, Counsel for Joseph C. Canizaro, Plaintiff/Appellee-2nd Appellant.
Lawrence J. Boasso, Waller & Associates, Metairie, LA, Counsel For Dixie Building Material Company, Defendant/Appellee-3rd Appellant.
Thomas L. Gaudry, Jr., Michael D. Peytavin, Ken D. Brown, Windhorst, Gaudry, Ranson, Higgins & Gremillion, L.L.C., Gretna, LA, Counsel for Maryland Casualty Company, Defendant/Appellee.
Panel composed of Judges JAMES L. CANNELLA, WALTER J. ROTHSCHILD And EMILE R. ST. PIERRE, Pro Tempore.
WALTER J. ROTHSCHILD, Judge.
This is an appeal from a summary judgment rendered in favor of Maryland Casualty Company on the issue of insurance coverage. For the reasons stated more fully herein, we affirm.

Facts and Procedural History
In November of 2000, Joseph C. Canizaro contracted with Vintage Contracting, L.L.C. to construct a new residence on Northline Street in Jefferson Parish. The contract between Canizaro and Vintage required Vintage to comply with the detail specifications in the Architectural Drawings and Project Manual. In connection with this residential construction project, Vintage obtained a commercial general liability policy from Maryland Casualty Company, Inc. through Vintage's agent, Stiel Insurance Services. The policy, numbered SCP 34591512, with a total annual premium of $1221.00, was effective from January 15, 2001 through January 15, 2002.
Vintage subsequently contracted with Dixie Building Material, Inc. to furnish concrete for the construction of the slab for the Canizaro residence. Dixie delivered the concrete on April 4, 2001. The Project Architect and Engineer refused *25 to certify the slab based on failure to comply with contract specifications. As a result, the concrete poured by Dixie, as well as the items encased therein, were removed and subsequently replaced at substantial cost to Canizaro.
Thereafter, Vintage made a demand against Dixie for losses suffered as a result of replacement of the concrete slab, and Dixie refused this demand. Vintage also made a claim against Maryland, asserting that the policy covered the losses sustained by removal and replacement of the Dixie concrete. On June 4, 2001, Maryland declined coverage under the policy.
On August 28, 2001, Canizaro and Vintage filed the present suit for damages against Dixie, Maryland Casualty and Stiel Insurance. Maryland Casualty and Stiel responded with answer and exceptions, and Dixie additionally brought reconventional and third party demands against Canizaro and Vintage.
On January 31, 2002, Vintage filed a motion for partial summary judgment against Maryland on the issue of coverage. Stiel filed its own motion for summary judgment on June 30, 2002 on the basis that there was no breach of duty by Stiel and thus no liability to plaintiffs as a matter of law. On September 4, 2002, Maryland also brought a motion for summary judgment on the basis that there was no coverage for the alleged incident under the subject policy.
These motions were heard at the same time in the trial court on November 15, 2002 and all matters were taken under advisement. By judgment rendered and signed on December 12, 2002, the trial court granted Maryland's motion for summary judgment finding no coverage under the subject policy. Additionally, the trial court denied both Vintage's motion for partial summary judgment and Stiel's motion for summary judgment. The trial court also assigned reasons for judgment.
Thereafter, Vintage, Canizaro and Stiel sought supervisory writs from the court's grant of Maryland's motion for summary judgment and the denial of summary judgment in favor of Vintage and Stiel.[1] Vintage and Canizaro subsequently brought separate devolutive appeals from the summary judgment rendered in favor of Maryland. Additionally, Dixie filed a motion to amend the judgment on the basis that in its reasons, the trial court improperly made findings of fact as to Dixie. Following denial of this motion, Dixie moved for a devolutive appeal of the trial court's judgment.

The Law
A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits submitted, if any show there is no genuine issue of material fact such that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B); Araujo v. Eitmann, 99-1377 (La.App. 5th Cir.5/17/00), 762 So.2d 223, 225. Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. Reynolds v. Select Props., 93-1480 (La.4/11/94), 634 So.2d 1180, 1183. Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Reynolds, supra; Schroeder v. Board of Supervisors of *26 La. State Univ., 591 So.2d 342, 345 (La. 1991).
An insurance policy is a contract between the parties and should be construed employing the general rules of interpretation set forth in the Louisiana Civil Code. Reynolds, supra, 634 So.2d at 1183. In Louisiana, insurance policies are interpreted under the rules governing contract interpretation. La. C.C. arts.2045-2057. Language in an insurance policy which is clear, expresses the intent of the parties and does not violate a statute or public policy, must be enforced as written. If the insurance policy is susceptible to two or more reasonable interpretations, then it is considered ambiguous and must be liberally interpreted in favor of coverage. Reynolds, supra; Newby v. Jefferson Parish Sch. Bd., 99-0098 (La.App. 5th Cir.6/1/99), 738 So.2d 93; Araujo v. Eitmann, supra, 762 So.2d at 225.
The purpose of liability insurance is to afford the insured protection from damage claims. Reynolds, supra. Insurance policies should be interpreted to effect, not deny, coverage. Yount v. Maisano, 627 So.2d 148, 151 (La.1993). Any ambiguity in an insurance policy's exclusion should be narrowly construed to afford coverage. Peterson v. Schimek, 98-1712 (La.3/2/99), 729 So.2d 1024, 1029. However it is also well-settled that unless a statute or public policy dictates otherwise, insurers have the right to limit liability and enforce conditions or limitations upon their insureds. Reynolds, supra, 634 So.2d at 1183. In addition, the insurer bears the burden of proving that a loss falls within a policy exclusion. Blackburn v. National Union Fire Ins. Co., 00-2668 (La.4/3/01), 784 So.2d 637, 641.
With these principles in mind, we turn to the language of the subject insurance policy to determine whether the trial court correctly found that no coverage existed for the damages claimed as a matter of law.

The Policy
The policy issued by Maryland Casualty Company to Vintage was a commercial general liability policy which contains general insuring language providing coverage for "bodily injury" or "property damage" caused by an "occurrence" that takes place in the "coverage territory" and within the policy period. The policy defines "property damage" in part as "physical injury to tangible property, including all resulting loss of use of that property." The general aggregate coverage limit under the policy was $2,000,000.00. The policy also contains a "products-completed operations hazard" provision with an aggregate limit of $2,000,000.00.
Section V, No. 16 of the policy describes the "products-completed operations hazard" as:
Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
(1) Products that are still in your physical possession; or
(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:
(a) When all of the work called for in your contract has been completed.
(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
(c) When that part of the work done at a job site has been put to its intended use by a person or organization other than another contractor or subcontractor working on the same project.

*27 Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as complete.
The policy also contains a "work-product" exclusion which reads as follows:
This insurance does not apply to:
j. Damage to Property
"Property damage" to:
* * *
(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
* * *
Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."
k. Damage to Your Product
"Property damage" to "your product" arising out of it or any part of it.
1. Damage to Your Work
"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."
This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.
As stated in the definitions section of the policy, "your work" means:
a. Work or operations performed by you or on your behalf, but does not include work or operations performed by another entity which joined with you to form a partnership or joint venture not shown as a Named Insured in the Declarations, which terminated or ended prior to the effective date of this policy; and
b. Materials, parts or equipment furnished in connection with such work or operations.

The Trial Court Judgment
In rendering judgment in favor of the insurer in this case, the trial court made a factual finding that the concrete supplied by Dixie Building Materials was defective. The trial court also specifically found that based upon the above-cited work-product exclusion, the policy does not provide coverage for the defective work which resulted in the damages in this case. Relying on Reynolds v. Select Properties, supra, 634 So.2d 1180 (La.1994) and Castigliola v. Dept. of Community Dev. Programs, 538 So.2d 1139 (La.App. 5th Cir.1989), the trial Court found that work-product exclusions such as the one contained in the Maryland policy have been held to be valid and enforceable, thereby excluding from coverage the damage done to the property on which the insured or someone working directly on behalf of the insured was performing operations. In addition, the trial court also cited to the contract between Vintage and Canizaro whereby Vintage agreed to obtain insurance protection for claims for damages other than to the work itself. With regard to the insured's claim that the products-completed operations hazard provision provided coverage for these damages, the trial court determined that this provision was inapplicable as it only provided coverage when the project is substantially complete, and the Canizaro residence was in its infancy stages at the time these damages were sustained.

*28 Vintage and Canizaro's Appeals

By their appeals, Vintage and Canizaro each argue that the "work-product" exclusion in Maryland's policy is inapplicable, ambiguous and unenforceable. Appellants further argue that the products-completed operations provisions confer coverage for the damages sustained herein, or in the alternative, are ambiguous and create an issue of material fact which is inappropriate for summary judgment. Appellants also contend that the trial court erred in relying on the construction contract between Vintage and Canizaro to determine the parties' intent in obtaining insurance protection.
Work-product exclusions similar to the one contained in Maryland's policy have been uniformly upheld in numerous Louisiana cases. See, Thorn v. Caskey, 32310 (La.App.2d Cir.9/2299), 745 So.2d 653; Joe Banks Drywall & Acoustics, Inc. v. Transcontinental Ins. Co., 32743 (La.App. 2 Cir. 3/1/00), 753 So.2d 980; Western World Ins. Co. v. Paradise Pools & Spas, 93-723 (La.App. 5th Cir.2/23/94), 633 So.2d 790; Rivnor Properties v. Herbert O'Donnell, Inc., 92-1103 (La.App. 5 Cir. 1/12/94), 633 So.2d 735, writ denied, 92-1293 (La.9/2/94), 643 So.2d 147; Hollar Enterprises, Inc. v. Hartman, 583 So.2d 883 (La.App. 1st Cir. 1991), Castigliola v. Department of Community Development, 538 So.2d 1139 (La. App. 5th Cir.1989). These exclusions reflect the intent of the insurance industry to avoid the possibility that coverage under a CGL policy will be used to repair and replace the insured's defective products and faulty workmanship. The CGL policy is not intended as a guarantee of the quality of the insured's products and work. W.S. McKenzie & H.A. Johnson, III, Insurance Law and Practice, La. Civil Law Treatise, Vol. 15, Section 198 (2nd ed.1996).
Louisiana jurisprudence has consistently recognized that liability policies are not performance bonds. Breaux v. St. Paul Fire & Marine Ins. Co., 345 So.2d 204, 208 (La.App. 3rd Cir.1977); Thorn v. Caskey, supra, Korossy v. Sunrise Homes, Inc., 94-473 (La.App. 5th Cir.3/15/95), 653 So.2d 1215, writ denied, 95-1536 (La.9/29/95), 660 So.2d 878. Although plaintiffs rely on two Louisiana cases to support their position that the policy language in the present case is ambiguous and unenforceable, we fail to find either of those cases to be controlling herein.
In Gottsegen v. Hart Prop. Mgmt., 02-129 (La.App. 5 Cir. 5/29/02), 820 So.2d 1138, writ denied, 02-1776 (La.10/4/02), 826 So.2d 1129, this court found the language of the policy to be ambiguous where the policy stated the business of the insured was real estate management, but the insured sought coverage for damage to construction work performed and the construction work was included in a supplemental declaration of coverage in the policy. The court also found that the project had been abandoned in that case, and the products-completed operations provisions of the policy were therefore applicable. The court found the existence of a conflict between coverage that was paid for and the exclusion that states that the same hazard was excluded. However, although the policy language in that case was similar to the language in the Maryland policy, the unique factors in the Gottsegen case involving an insured operating in a capacity as property manager and contractor are not present under the facts of this case, and we find the holding in the Gottsegen case to be distinguishable on that basis. Further, the work in the present case was not abandoned as it was in the Gottsegen case.
Appellants also rely on the case of Serigne v. Wildey, 612 So.2d 155 (La.App. 5 *29 Cir.1992), writ denied, 613 So.2d 994 (La. 1993), in which this court upheld a finding of coverage where a concrete marina which was substantially complete suddenly fell into a bayou. However, we find this case to be distinguishable from the facts of the present case, where there was no sudden collapse of a building which was nearly complete.
In the present case, plaintiffs' claims against the insurer for which coverage is asserted are for defects in the concrete poured by the insured's subcontractor and for the subsequent damage to the items encased therein that were required to be removed and replaced along with the concrete. Plaintiffs do not allege that any damage was caused to any person or to any other property other than to the work of the insured. Under the clear terms of this policy, we find no conflict between the coverage which was negotiated and paid for and the exclusions relied upon by the insurer.
Rather, the policy in this case, specifically the exclusion contained in coverage section A(2)j(5), clearly excludes coverage for property damage to the property on which the contractor or subcontractor is performing operations if the damage arises out of those operations. In this case, the damages claimed and the relief sought by plaintiffs are all consequences of the alleged defective workmanship of work performed by or on behalf of the named insured, for which the policy provides no coverage. Further, the exclusion contained in section A(2)j(6) excludes coverage to property that must be repaired or replaced because the insured's work was incorrectly performed on it. The definition of the insured's work in the policy includes materials furnished in connection with work performed by the insured or someone acting on his behalf. Based on the clear provisions of this insurance contract, the trial court correctly held that Maryland's policy did not insure Vintage against the loss sued for.
The insurance policy supplied by Maryland also includes coverage for products-completed operations hazard. This is among the standard hazards covered by a comprehensive general liability policy. See, McKenzie & Johnson, Insurance Law and Practice, 15 La. Civil Law Treatise, Section 186 (2nd ed.1996). Coverage is provided for the risk of liability arising out of products after they have left the hands of the insured. The completed operations hazard refers to the insured's exposure to liability arising out of completed work performed away from his premises. The products liability and completed operations hazards are usually covered under the standard provisions of a general liability policy, but an insured may choose to exclude such coverage. Id.
As indicated on the declarations page of the subject policy, the insured obtained coverage for products-completed operations hazard within the general coverage section of the policy. This coverage was specifically defined in the definitions section of the policy. According to the express terms of the policy, this coverage includes property damage which arises out of the insured's work, except "work that has not yet been completed or abandoned." The policy also contains a specific definition of when the work will be deemed completed so as to trigger this coverage. Under the express terms of the policy, there was no coverage at the time the damages were sustained as the work called for the in Vintage's contract was not complete nor was part of the work put to its intended use by someone other than another contractor or subcontractor working on the same project.
Although appellants contend that this provision in the policy is ambiguous, we find the terms of the policy to be clear and *30 unequivocal. In order for this coverage to apply, the work must have been completed or abandoned, neither of which occurred in this case. We find no merit in appellant's argument that the slab constitutes a separate part of the residence and was completed and put to its intended use at the time the damages were discovered. The work required under the construction contract in this case was the construction of the entire Canizaro residence, and completion of the slab does not amount to completion of the work called for in the construction contract.
Moreover, we reject appellants' arguments that the slab was completed as it was put to its intended use by the installation of the first floor framing for this house. Vintage's argument that defendant's interpretation of the contract requires the contractor to complete the home knowing of the defective concrete is unpersuasive. The policy unambiguously excludes coverage for damage to property arising out of operations performed by the insured or someone working on the behalf of the insured. Policy, Section A(2)j(5). Under these circumstances, we conclude that the trial court was correct in determining that no coverage existed under the products-completed operations hazard contained in the Maryland policy.

Dixie's Appeal
Dixie Building Material Co., Inc. has also filed a devolutive appeal from the December 12, 2002 judgment of the trial court. Vintage and Canizaro filed in this Court a motion to dismiss Dixie's appeal, and we referred the motion to the merits. For the reasons stated herein, we now deny the motion to dismiss Dixie's appeal.
By its appeal, Dixie contends that the trial court erred in including in its reasons for judgment a finding of fact as to the liability of Dixie which was not properly before the court. We agree with this contention.
We recognize that appeals are taken from adverse judgments, not from opinions of the court. The trial court's written reasons, while defining the principles upon which the court is deciding a case, form no part of the official judgment signed and from which appeals are taken. La. C.C.P. arts.1917, 1918; Western World v. Paradise Pools, 93-723 (La.App. 5 Cir. 2/23/94), 633 So.2d 790, 792.
In the present case, the trial court did not render judgment against Dixie; however, in its reasons for judgment, the trial court made factual findings adverse to Dixie, a party in this case. Although Dixie was made a defendant in this suit by the original petition filed by Vintage and Canizaro, Dixie was not part of the summary judgment proceedings brought by Maryland Casualty, Vintage and Stiel. Dixie was not notified of these proceedings, nor did counsel for Dixie appear at the hearing on the motions for summary judgment. Under these circumstances, the trial court was without authority to make a binding factual finding against Dixie, and any part of the trial court's reasons for judgment in this case have no affect against Dixie in future proceedings in this matter.

Conclusion
For the reasons stated herein, the summary judgment rendered by the trial court in favor of Maryland Casualty Company is hereby affirmed. We also find no error of the trial court in denying the motion for summary judgment brought by Vintage Contracting, LLC. Further, we hold that the factual findings adverse to Dixie Building Materials, Inc. which are contained in the trial court's reasons for judgment shall have no affect on the future proceedings in this case.
AFFIRMED.
NOTES
[1] On March 5, 2003, this Court denied the application for supervisory writs.