JUDE G. GRAVOIS, Judge.
12In this suit on open account and for breach of contract, appellant Perque Carpet and Drapery, Ltd. (“Perque”) appeals a trial court judgment finding co-defendants Tish Boudreaux (“Mrs. Boudreaux”) and Lady Bird Homes, Inc. (“Lady Bird Homes”) liable to Perque for the amounts of $8,894.00 and $16,787.00, respectively, for flooring installed by Perque in Mrs. Boudreaux’s home.[1] Perque argues on appeal that the trial court erred in applying the parol evidence rule at trial. Perque *932 also argues that the trial court erred in not finding Mrs. Boudreaux liable for the full amount of $25,681.00 due Perque for the Boudreaux flooring job, less a credit of $1,200.00 for a payment made by Mrs. Boudreaux to Perque.
After thoroughly considering the record and the applicable law, for the reasons set forth below, we find that Mrs. Boudreaux is hable to Perque for the net amount of $24,481.00 due Perque for the Boudreaux flooring job. Accordingly, we affirm that part of the judgment that found Mrs. Bou-dreaux liable to Perque and |Hamend it to cast Mrs. Boudreaux in judgment for the net amount of $24,481.00 due Perque for the Boudreaux flooring job. Further, we reverse that part of the judgment that found Lady Bird Homes liable to Perque. We affirm the trial court’s judgment awarding Perque legal interest from date of judicial demand until paid.

FACTS AND PROCEDURAL HISTORY

On May 16, 2006, Mrs. Boudreaux and her husband entered into a written contract with Lady Bird Homes for construction of their new home in Luling, Louisiana. Mr. Nick Christiana (“Mr. Christiana”) was the owner and president of Lady Bird Homes. The initial total contract price for the home with lot was $470,551.00, which included materials, labor and supervision fee. Among other specific items, the construction contract provided the Boudreauxs with an allowance of $16,787.00 for all flooring throughout the house. Lady Bird Homes used Perque as its flooring subcontractor for the Boudreaux job. Lady Bird Homes and Perque had an unwritten open account relationship that spanned approximately ten years. Mrs. Bou-dreaux made various flooring selections that ultimately totaled $25,681.00, which was over the allowance by $8,894.00. In due course, the flooring was installed by Perque in the Boudreaux home.[2]
By January of 2007, construction of the Boudreaux home was substantially complete. Mr. and Mrs. Boudreaux and Lady Bird Homes closed on the construction contract on January 31, 2007. At the closing, Mr. Christiana on behalf of Lady Bird Homes signed an affidavit attesting that to his knowledge and belief, there were no unpaid bills for labor or materials furnished in the construction of the Bou-dreaux home. Shortly after the closing, Mr. LChristiana/Lady Bird Homes refunded $6,618.53 to the Boudreauxs. This refund represented an overpayment or credit that was due the Boudreauxs on the building contract as of the time of the closing.
Perque asserted to Mrs. Boudreaux several weeks after the closing that it had not been paid anything for the flooring it had installed in the Boudreaux home. In May of 2007, Mrs. Boudreaux applied for financing to pay off the entire amount due to Perque. Mrs. Boudreaux’s financing application was denied. Thereafter, Per-que and Mrs. Boudreaux reached a verbal agreement for Mrs. Boudreaux to pay Per-que the entire amount due Perque over a two-year period, with Perque providing the financing “in house.” A follow-up written payment agreement to that effect dated July 12, 2007 was faxed by Perque to Mrs. Boudreaux. Mrs. Boudreaux signed the agreement. Mrs. Boudreaux subsequently made one payment of $1,200.00 to Perque on the agreement. On July 26, 2007, Per-que filed a lien against the Boudreaux homesite for the full amount of the unpaid *933 flooring. The lien was ultimately cancelled prior to trial.
When Mrs. Boudreaux failed to make any subsequent payments to Perque, Per-que filed this suit on open account against Mrs. Boudreaux. Mrs. Boudreaux answered the suit and filed a third party demand against Lady Bird Homes. Per-que then filed an amended petition adding Lady Bird Homes as a defendant. Perque later filed a second supplemental and amending petition, adding a breach of contract claim against Mrs. Boudreaux, citing the July 12, 2007 written payment agreement between Perque and Mrs. Bou-dreaux.
Trial proceeded on February 1, 2010. Lady Bird Homes did not appear at trial, nor did Mr. Christiana.[3] On March 80, 2010, the trial court rendered judgment in favor of Perque and against Mrs. Bou-dreaux in the amount of |5$8,894.00, representing the amount Mrs. Boudreaux exceeded her flooring allowance in the building contract. The trial court rendered an amended judgment on April 7, 2010, additionally casting Lady Bird Homes in judgment to Perque for $16,787.00, the original amount of the Boudreauxs’ flooring allowance in the building contract. Perque filed this timely appeal, praying that Mrs. Boudreaux be cast in judgment for the full amount due Perque. Lady Bird Homes did not appeal.

ANALYSIS

Law of contract interpretation

This Court, in Kappa Loyal L.L.C. v. Plaisance Dragline & Dredging Co., Inc., 08-124 (La.App. 5 Cir. 6/19/03), 848 So.2d 765, writ denied 2003-2348 (La.12/12/03), 860 So.2d 1154, summed up the law on contract interpretation as follows:
We are obligated to give legal effect to contracts according to the true intent of the parties. LSA-C.C. art. 2045. The true intent of the parties to a contract is to be determined by the words of the contract when they are clear, explicit, and lead to no absurd consequences. LSA-C.C. art. 2046. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. LSA-C.C. art. 2046. In such cases, the meaning and intent of the parties to the written contract must be sought within the four corners of the instrument and cannot be explained or contradicted by parol evidence. LSA-C.C. art. 1848.[4] Contracts, subject to interpretation from the instrument’s four corners without the necessity of extrinsic evidence, are to be interpreted as a matter of law, and the use of extrinsic evidence is proper only where a contract is ambiguous after an examination of the four corners of the agreement. In cases in which the contract is ambiguous, the agreement shall be construed according to the intent of the parties. Intent is an issue of fact which is to be inferred from all of the surrounding circumstances. A doubtful provision must be interpreted in light of the nature of the contract, *934 equity, usages, the conduct of the parties before and after the formation of the contract, and other contracts of a like nature between the same parties. LSA-fC,C.(i art. 2053. Whether a contract is ambiguous or not is a question of law. Where factual findings are pertinent to the interpretation of a contract, those factual findings are not to be disturbed unless manifest error is shown.

First Assignment of Error

In its first assignment of error, Perque argues that, because in its Reasons for Judgment the trial court never found that the July 12, 2007 written payment agreement between Perque and Mrs. Bou-dreaux was ambiguous, the trial court erred in admitting parol evidence to clarify the agreement.[5]
The agreement is in letter form on Per-que letterhead, is dated July 12, 2007, and provides as follows:
RODNEY OR TISH BOUDREAUX
102 LAC CYPRIERE
LULING, LA 70070
RODNEY OR TISH BOUDREAUX:
I AM FAXING YOU THE PAYMENTS ON LOAN FOR $25,681.00, WHICH WILL BE PAYABLE IN 24 MONTHLY PAYMENTS. PAYABLE TO PERQUE CARPET AND DRAPERY ON EQUAL MONTHLY PAYMENTS, FIRST PAYMENT DUE 07/25/07 AT $1,138.20, INTEREST RATE AT 6%. PLEASE SIGN AT THE BOTTOM AS PER AGREEMENT WITH STEWART PERQUE.
A handwritten amount of “1200.00” is written just following the text of the letter. The letter is signed by J.P. Davis of the Credit Department of Perque. The letter is also signed by Tish Boudreaux under the notation “Customer Signature as to Agreement.”

Ambiguity of written payment agreement

We agree with Perque that in its Reasons for Judgment, the trial court never found that the written payment agreement was ambiguous. We further agree with Perque that as a matter of law, the agreement is clear and not ambiguous. In the agreement, Mrs. Boudreaux clearly agreed to pay Perque the principal sum of 17$25,681.00 over a two-year period at the interest rate of 6% in equal installments of $1,138.20 per month beginning on July 25, 2007. Mrs. Boudreaux in fact subsequently made a payment of $1,200.00 to Perque pursuant to the agreement. Accordingly, because the agreement is clear and not ambiguous, we find that testimonial or other evidence should not have been admitted by the trial court to negate or vary the contents of the agreement.

Vice of Consent

Ambiguity, however, is not the only time parol evidence is allowed to explain a written contract. As noted above, LSA-C.C. art. 1848 provides that in the interest of justice, testimonial or other evidence may be admitted to prove a circumstance such as a vice of consent. Furthermore, LSA-C.C. art. 1948 provides that consent may be vitiated by error, fraud, or duress. In her Answer to Perque’s second amended and supplemental petition, Mrs. Bou-dreaux asserted that she would never have submitted her signature to the agreement “but for fraud, duress, threats and coer *935 cion” on the part of Perque. As such, we find that admission of parol evidence for the purpose of proving a vice of consent was appropriate. We must now determine, based on the evidence introduced, whether Mrs. Boudreaux has sufficiently proven a vice of consent that would vitiate her consent to the agreement.
Mrs. Boudreaux testified that she first learned in March of 2007, several weeks after the closing, that Perque had not been paid for the flooring it had installed in her home. She said she believed that Perque had been paid out of the amount tendered to Lady Bird Homes at the closing. She explained that Mr. Christiana “took care of everything” during construction; she had received no invoices from Perque, either directly or from Mr. Christiana, during the construction. All bills from Perque had gone to Mr. Christiana at Lady Bird |sHomes. She assumed that Lady Bird Homes had paid Perque, since Mr. Christi-ana had never told her before the closing that he hadn’t.[6] She admitted that she did know, however, that she had exceeded her flooring allowance.
After Mrs. Boudreaux learned that Per-que had not been paid for the flooring, she tried calling Mr. Christiana for an explanation, but he did not return her calls. The only time she was able to speak to him was one day, several weeks after the closing, when he drove up to her house and found her and Laure Perque, the salesperson with Perque who handled Lady Bird Homes’ account and who sold Mrs. Bou-dreaux the flooring in question, in her front yard. Mrs. Boudreaux admitted that Mr. Christiana stated in front of both her and Laure that Mrs. Boudreaux was responsible for the entire payment to Perque for the flooring it had installed in the Boudreaux home, and that her response thereto was “Okay.” She testified, however, that she thought Mr. Christiana meant only the amount she exceeded her flooring allowance, not the entire amount.
According to Mrs. Boudreaux, things then “got ugly” with Perque calling her repeatedly for payment, culminating in her filling out a financing agreement application with American General Finance Services on May 31, 2007. When her loan application with American General was denied, she entered into the written payment agreement with Perque to “buy more time” to settle the matter with Mr. Christi-ana and also to prevent Perque from placing a lien on her home, as allegedly promised by Stewart Perque, a co-owner of Perque.[7] Mrs. Boudreaux testified that the situation caused her significant stress that required medical treatment.
Both Laure Perque and Stewart Perque testified at trial. Laure testified that though Perque had a long-standing open account arrangement with Lady Bird 1 ¡Homes, each home’s particular account was handled individually. She testified that Lady Bird Homes had a good payment history with Perque and that they had done business together for at least 10 years with an average of 10-12 homes per year. She testified, as did Stewart, that Lady Bird Homes did not pay Perque for the Boudreauxs’ flooring. She stated, however, that she did not discuss the unpaid flooring with Mrs. Boudreaux until after the closing.
*936 Laure also described the unplanned “meeting” that took place in Mrs. Bou-dreaux’s front yard several weeks after the closing. This meeting was the only time all three parties talked together about the unpaid Boudreaux flooring bill. Laure agreed with Mrs. Boudreaux that Mr. Christiana said that Mrs. Boudreaux would pay the entire bill for the Boudreaux flooring job, and that although Mrs. Boudreaux did not say much, she did not deny Mr. Christiana’s statement either.
In light of the refund that the Bou-dreauxs received from Lady Bird Homes after the closing, and after carefully considering all of the testimony adduced at trial and the documentation introduced into evidence, particularly the building contract accountings provided by Lady Bird Homes, we find that Lady Bird Homes did not pay Perque anything for the flooring, and that the final price Lady Bird Homes charged the Boudreauxs for their new home did not include any amounts for flooring installed by Perque in the Boudreaux home.
Although Mrs. Boudreaux testified that it was her understanding that Lady Bird Homes had paid Perque for the Boudreaux flooring job, we find that Mrs. Boudreaux ultimately acknowledged and accepted responsibility for payment of the entirety of the Perque bill by first applying for financing with American General for the entirety of the Perque bill, and then by later entering into the written payment agreement with Perque for the entirety of the Perque bill after her loan application with American General was denied. Mrs. Bou-dreaux’s testimony 110at trial was clear that she understood that by signing the agreement, she had agreed to pay the entirety of the Perque bill over a two-year period. Mrs. Boudreaux never claimed to be mistaken or in error regarding the terms or the nature of the agreement. Accordingly, we find that Mrs. Boudreaux has not provided sufficient evidence to vitiate her consent to the agreement because of error or fraud.
We now consider whether Mrs. Boudreaux’s consent to the agreement should be vitiated because of duress. Mrs. Boudreaux claimed at trial that one of the reasons she signed the agreement with Perque was that Stewart Perque promised to refrain from placing a lien on her home-site in consideration of her making a payment agreement with Perque. Stewart Perque denied this at trial. This scenario does not rise, however, to the level of duress sufficient to vitiate Mrs. Bou-dreaux’s consent to the agreement. Consent is vitiated when it has been obtained by duress of such a nature as to cause a reasonable fear of unjust and considerable injury to a party’s person, property, or reputation. LSA-C.C. art. 1959. A threat of doing a lawful act or a threat of exercising a right does not, however, constitute duress. LSA-C.C. art. 1962. Perque had the legal right under LSA-R.S. 9:4801, et seq., to file a lien against the Boudreaux homesite in order to secure the debt it claimed it was owed for the flooring it installed in the Boudreaux home. Accordingly, Perque’s alleged assertion that it would file a lien against the Boudreaux homesite if Mrs. Boudreaux would refuse to enter into a payment agreement with Perque is not considered legal duress.
Mrs. Boudreaux also claimed that she entered into the agreement with Perque in order to buy time to resolve the flooring payment issue with Mr. Christiana. While that may have been one reason Mrs. Bou-dreaux applied for financing with American General and later signed the agreement with Perque, such does not vitiate her consent to the agreement.
|nMrs. Boudreaux further claimed that she was pressured into entering into *937 the agreement with Perque before she knew to whom the debt belonged and before she knew her legal rights with respect thereto. The record shows, however, that Mrs. Boudreaux knew at least as early as March of 2007 that Perque was looking to her for payment. The record is devoid of any evidence that Mrs. Boudreaux was prevented in any way from seeking legal advice before ultimately signing the agreement in July of 2007. Likewise, the record shows that Mr. and Mrs. Boudreaux were fairly sophisticated in that they owned a business, and were building an upscale home valued over $475,000 that required their detailed participation, as evidenced by the construction contract and the different allowances listed therein.
As noted above, at the closing, Mr. Christiana on behalf of Lady Bird Homes signed an affidavit attesting that to his knowledge and belief, there were no unpaid bills for labor or materials furnished in the construction of the Boudreaux home. Mr. Christiana explained that he signed the affidavit because he was under the understanding at that time that Mrs. Bou-dreaux had paid Perque, and that to his knowledge everybody had been paid. Neither Perque nor any other material or labor suppliers are specifically mentioned in the affidavit. This affidavit does not invalidate the later signed written payment agreement between Mrs. Boudreaux and Perque. The affidavit was made by Mr. Christiana, who was attesting only to his own knowledge or belief at the time of the closing. He was not a party to any of the later communications and/or negotiations between Perque and Mrs. Boudreaux that ultimately led to the “in house” financing agreement between Perque and Mrs. Boudreaux. Accordingly, the affidavit has no bearing or effect on the later signed written payment agreement between Perque and Mr. Boudreaux.
|12We conclude, therefore, that Mrs. Boudreaux failed to prove any of the vices of consent of error, fraud or duress that would invalidate her written payment agreement with Perque dated July 12, 2007.

Second Assignment of Error

In its second assignment of error, Perque argues that, because the testimony at trial clearly supported Perque’s position that the written payment agreement is clear and unambiguous, the trial court erred in failing to hold Mrs. Boudreaux liable for the full amount due Perque for her flooring. We agree.
As we have found above, the agreement from Mrs. Boudreaux to Perque is clear and unambiguous. Furthermore, Mrs. Boudreaux took affirmative action not once (by applying for the American General loan), but twice (by also signing the agreement with Perque after her American General loan application was denied), to finance the entire amount due to Perque for the flooring installed in her home. Mrs. Boudreaux’s testimony was unequivocal that she understood the factual basis for and the terms of the agreement. Mrs. Boudreaux even went so far as to subsequently make a payment of $1,200.00 to Perque on the agreement. As found above, her claimed reasons for entering into the agreement do not vitiate her consent thereto. Accordingly, the trial court erred in casting Mrs. Boudreaux in judgment for an amount less than the full amount she agreed to pay in her July 12, 2007 agreement with Perque, less a credit for the $1,200.00 payment subsequently made by Mrs. Boudreaux to Perque pursuant thereto. We therefore reverse that part of the judgment that held Lady Bird Homes liable to Perque for the amount of $16,787.00, and amend the judgment to find Mrs. Boudreaux liable to Perque for *938 the net amount of $24,481.00 due to Per-que for the Boudreaux flooring job.[8]

\ ^CONCLUSION

For the foregoing reasons, we reverse that part of the trial court’s judgment that found Lady Bird Homes liable to Perque. We affirm that part of the judgment that finds Mrs. Boudreaux liable to Perque and amend it to hold Mrs. Boudreaux liable to Perque for the net amount of $24,481.00 due Perque for the Boudreaux flooring job. We affirm the trial court’s judgment awarding Perque legal interest from date of judicial demand until paid. Costs of this appeal are assessed to Mrs. Bou-dreaux.

REVERSED IN PART; AFFIRMED AS AMENDED

WICKER, J., concurs in part and dissents in part with reasons.
EDWARDS, J., dissents with reasons.

. The trial court judgment also awarded Per-que legal interest on the amounts awarded from date of judicial demand until paid.

. The value of the flooring installed by Perque in the Boudreaux home ($25,681.00) is not in dispute. Nor is the fact that Perque has not been paid therefor, except for a payment of $1,200.00 made by Mrs. Boudreaux to Per-que.

. Though Mr. Christiana did not appear at trial, his deposition was introduced into evidence.

. LSA-C.C. art. 1848 provides as follows: Testimonial or other evidence may not be admitted to negate or vary the contents of an authentic act or an act under private signature. Nevertheless, in the interest of justice, that evidence may be admitted to prove such circumstances as a vice of consent, or a simulation, or to prove that the written act was modified by a subsequent and valid oral agreement.

. The trial court's reasons for judgment, while defining the principles upon which the court is deciding a case, form no part of the official judgment signed and from which appeals are taken. Western World Ins. Co., Inc. v. Paradise Pools & Spas, Inc., 633 So.2d 790, 792 (La.App. 5 Cir.1994), citing LSA-C.C.P. arts. 1917 and 1918.

. The first invoice Mrs. Boudreaux received from Perque that listed her as the customer instead of Lady Bird Homes was in June of 2007, although Perque had been calling her about the debt for some time before then.

. Stewart Perque denied that he ever promised to refrain from filing a lien on the Bou-dreaux homesite in consideration for the payment agreement.

. Even though Lady Bird Homes failed to appeal the adverse judgment, Perque appealed the amended judgment, seeking a judgment that casts Mrs. Boudreaux for the full amount in dispute. Accordingly, the entire judgment is properly before this court.