# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 19-403


RAIN CII CARBON, LLC

VERSUS

TURNER INDUSTRIES GROUP, LLC, ET AL.


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2013-1325
HONORABLE ROBERT LANE WYATT, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## JOHN E. CONERY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of John E. Conery, Van H. Kyzar, and Candyce G. Perret, Judges.


Perret, Candyce, J. dissents and assigns reasons.


**MOTION TO STRIKE REPLY BRIEF DENIED AS MOOT.
MOTION FOR LEAVE TO FILE
CORRECTED REPLY BRIEF GRANTED.
AFFIRMED.**

**James Michael Garner**
**Sher, Garner, Cahill, Richter, Klein & Hilbert, LLC**
**909 Poydras Street, 28th Floor**
**New Orleans, Louisiana  70112**
**(504) 299-2100**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Rain CII Carbon, LLC**

**Joseph Anthony Delafield**
**Attorney at Law**
**3401 Ryan Street, Suite 307**
**Lake Charles, Louisiana 70605**
**(337) 477-4655**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Turner Industries Group, LLC**

**Robert I. Siegel**
**Alistair M. Ward**
**Gieger, LaBorde & Laperouse**
**701 Poydras Street, Suite 4800**
**New Orleans, Louisiana  70139-4800**
**(504) 561-0400**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Catlin Specialty Insurance Company**

**Ashley Belleau**
**Lugenbuhl, Wheaton, Peck, Rankin & Hubbard**
**601 Poydras Street, Suite 2775**
**New Orleans, Louisiana  70130**
**(504) 568-1990**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Victory Energy Operations, LLC**

**Christopher Paul Ieyoub**
**Plauche, Smith & Nieset**
**Post Office Drawer 1705**
**Lake Charles, Louisiana  70602**
**(337) 436-0522**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **ReCon Engineering, Incorporated**

**Patrick J. McShane**
**Danica B. Denny**
**Kathleen P. Rice**
**Frilot, LLC**
**1100 Poydras Street, Suite 3700**
**New Orleans, Louisiana  70163**
**(504) 599-8000**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Alterra America Insurance Company**

**Kristopher Todd Wilson**
**Heather N. Sharp**
**Lugenbuhl, Wheaton, Peck, Rankin & Hubbard**
**601 Poydras Street, Suite 2775**
**New Orleans, Louisiana  70130**
**(504) 568-1990**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**First Financial Insurance Company**

**Sidney W. Degan, III**
**Karl H. Schmid**
**Degan, Blanchard & Nash**
**400 Poydras Street, Suite 2600**
**New Orleans, Louisiana  70130**
**(504) 529-3333**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Illinois National Insurance Company**
**Chartis Specialty Insurance Company**

**Catherine N. Thigpen**
**Degan, Blanchard & Nash**
**5555 Hilton Avenue, Suite 620**
**Baton Rouge, Louisiana  70808**
**(225) 610-1110**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Illinois National Insurance Company**
**Chartis Specialty Insurance Company**

**Gerald L. Jackson**
**Crowe & Dunlevy**
**321 South Boston Avenue, #500**
**Tulsa, Oklahoma  74103-3313**
**(918) 592-9800**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Victory Energy Operations, LLC**

**CONERY, Judge.**

Following arbitration proceedings, the plaintiff returned to the Fourteenth Judicial District Court advancing purported tort claims against the initial defendant's insurers. The insurers filed exceptions of no right of action, asserting that the plaintiff's only cause of action arose from the contracts between the plaintiff and the insured. The insurers further filed motions for declaratory judgment and for summary judgment denying coverage based on policy exclusion language. The trial court dismissed the plaintiff's claims against the insurers, finding merit both in the exceptions of no right of action and on the motions for declaratory and summary judgments regarding coverage. The plaintiff appeals. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

Plaintiff, Rain CII Carbon LLC (Rain), engaged ReCon Engineering, Inc., among others, to build a waste heat recovery power generation unit at its Calcasieu Parish facility in order to reduce electrical costs of the plant's operation. Rain instituted this matter in the Fourteenth Judicial District Court by its March 2013 petition alleging a delay in the completion of the project resulted in "egregiously higher" costs than initially estimated. By its First and Second Supplemental and Amended Petitions, Rain eventually included both ReCon Engineering and ReCon Management Services, Inc. (collectively ReCon) as defendants as well as their professional liability insurer, XL Specialty Insurance Company (XL Specialty). It further defined its claimed damages as including and "not limited to, extra construction costs and expenses, including extra costs due to resulting construction compression and accelerating cost expenses."

ReCon had provided services for Rain pursuant to a 2008 Service Contract and, during the course of work on the power generation unit, Rain issued six purchase orders with included specific language that "Rain CII Service Contract General Conditions & Terms apply to all service purchases." After Rain instituted this matter, ReCon cited an arbitration clause contained within those purchase orders and sought a stay of the Fourteenth Judicial District Court proceedings.

By September 2015 order, the trial court entered the stay and compelled the parties to arbitration. Rain thereafter filed its demand for arbitration in November 2015 in New Orleans, as provided in the contract.

With that arbitration demand against ReCon proceeding in New Orleans, Rain filed a March 2016 Third Supplemental and Amended Petition in the trial court and included ReCon's insurers (collectively Insurers) as Defendants pursuant to the direct action statute, La.R.S. 22:1269. Rain alleged coverage under policies issued by:

> First Financial Insurance Company (First Financial) as insurer under a commercial general liability policy issued to ReCon for the year September 1, 2010-September 1, 2011.
>
> Chartis Specialty Insurance Company (Chartis) as insurer under an excess/liability policy issued to ReCon for the year September 1, 2010-September 1, 2011.
>
> Catlin Specialty Insurance Company (Catlin) as insurer under a commercial general liability policy issued to ReCon for the year September 1, 2011-September 1, 2012.
>
> Chartis as insurer under an excess/liability policy issued to ReCon for the year September 1, 2011-September 1, 2012.
>
> Illinois National Insurance Company (Illinois National) as the insurer under a commercial general liability policy issued to ReCon for the year September 1, 2012-September 1, 2013.

Alterra American Insurance Company (Alterra) as the insurer under an excess/liability policy issued to ReCon for the year September 1, 2012-September 1, 2013.

Rain included in the Third Supplemental and Amended Petition an allegation that ReCon's "failure to properly expedite equipment on the Project, failure to adequately schedule deliveries of equipment, and failure to ensure timely delivery of equipment has caused Rain to lose tangible property, i.e., money." The policies issued by the Insurers, Rain asserted, provided coverage "for all of Rain's claims against ReCon in this suit" as they "provide coverage for 'property damage,' including the loss of use of tangible property."[1] Rain contended by the petition that Louisiana law equates "tangible property" with "corporeal property," which "includes money." In support, Rain included a citation to *Dietrich v. Travelers Insurance Co.*, 551 So.2d 64, 66 (La.App. 1 Cir. 1989), *writ denied*, 559 So.2d 121 (La.1990), a case discussed by Rain in the matter now under consideration and presented for the proposition that property damage resulting in loss of use of tangible property that is not physically injured includes loss of money. Alleging solidary liability of the Insurers with ReCon, Rain sought all sustained damages from the Insurers.

The Insurers responded to the Third Supplemental and Amended Petition with exceptions of prematurity, asserting that Rain was required to proceed against ReCon in arbitration before proceeding against the Insurers, as well as exceptions of lis pendens and no right of action. The latter exception challenged Rain's ability to

---

[1] Discussed further below, the subject policies define "property damage" as "physical injury to tangible property, including all resulting loss of use of that property" or "loss of use of tangible property that is not physically injured."

pursue the Insurers in a direct action due to what the Insurers characterized as a purely contractual claim.[2]

The trial court rendered a November 29, 2016 judgment sustaining the exceptions of no right of action upon a finding that Rain had no right of action under the direct action statute, La.R.S. 22:1269, "as its claims against ReCon Engineering, Inc. arise solely out of contractual obligations." It therefore dismissed Rain's claims against the Insurers with prejudice, but "only on the petitions previously filed in this record." The trial court reserved a ruling on the exceptions of prematurity and lis pendens.

The trial court further permitted Rain's filing of a Fourth Supplemental and Amended Petition, which Rain represented as a "comprehensive restatement" of its earlier petitions.[3] By the petition, Rain maintained ReCon as a defendant, but explained that "Rain has entered into a settlement with ReCon whereby ReCon will be dismissed from this lawsuit only for its uninsured liability and for any and all liability of ReCon covered by and within the limits of XL Specialty's [professional liability policy]." Rain noted a reservation of rights to "proceed against ReCon to the extent of other available insurance, such that ReCon remains a defendant so as to satisfy Louisiana's Direct Action Statute, La.R.S. 22:1269, relative to Plaintiffs' reserved claims" against the Insurers. Rain also explained that ReCon assigned its

---

[2] By its terms, the direct action statute, La.R.S. 22:1269, does not apply to contractual claims.

[3] Although Rain pursued an appeal of the judgment sustaining the exception of no right of action, this court observed that the Fourth Supplemental and Amended Petition alleged a negligence-based cause of action and, thus, dismissal of the earlier contract claims did not completely dismiss any party. Finding the judgment therefore constituted a non-appealable interlocutory judgment pursuant to La.Code Civ.P. art. 1915(B), the panel dismissed the appeal. *See Rain CII Carbon, LLC v. Turner Indus. Grp.*, 17-223 (La.App. 3 Cir. 4/5/17) (an unpublished decision) (2017 WL 1279653).

rights under the pertinent policies to Rain for "all proceeds, payments, coverage, benefits, and amounts due under the Policies for all post-loss claims, rights, and causes of action" arising from the project.

In an effort to distance the restated claims from the dismissed, contract-based petitions, Rain noted that Rain and ReCon entered into a general Service Contract in February 2008, well before the contemplation of the waste heat recovery power generation project. It thus alleged that the Service Contract did not, and could not, detail ReCon's specific work on the project and "did not reference the estimating, planning, sequencing, expediting, or scheduling that ReCon was to perform[.]" Rather, those tasks began to be discussed in 2010, with ReCon estimating its costs of the project in 2011. The resulting work was not performed pursuant to the 2008 Service Contract according to Rain, but arose from extra-contractual duties. Specifically, Rain alleged that ReCon "negligently" performed as expeditor of materials for the project, failed to maintain an adequate schedule of delivery of equipment to the site, and failed to properly sequence the work, as well as delivery of goods and services, at the facility. Rain alleged that the Insurers were solidarily liable with ReCon "for all damages sustained by Rain as a result of ReCon's fault and negligence up to and including the limits of the policies." Rain repeated the demand that the Insurers' policies provided coverage based on its position that "property damage" includes loss of money as tangible property.

Despite Rain's settlement with ReCon and XL Specialty, arbitration proceedings continued against ReCon in New Orleans. In January 2017, Rain filed a First Amended and Restated Statement of Claims in the arbitration, dismissing XL Specialty and partially dismissing its claims against ReCon due to the settlement. It maintained ReCon's presence for pursuit of other available insurance and attempted

5

to join the Insurers as parties to the arbitration. Like the Fourth Supplemental and Amended Petition filed before the trial court, the amended arbitration statement of claims reflected Rain's characterization of the claims as related to extra-contractual duties as well as its position that ReCon negligently performed services that arose after the 2008 Service Contract.

The Insurers objected to Rain's attempt to compel their participation in the arbitration. Specifically, the Insurers observed that they were not parties to any purchase order or contract that included an arbitration agreement. In March 2017, an R-7 Arbitrator[4] appointed to consider the discreet issue of the Insurers' objection to joinder, ruled in favor of the Insurers. Noting the differences between litigation and arbitration, the R-7 Arbitrator explained that Rain failed to meet the "significant hurdle" of compelling joinder of non-signatory parties to the arbitration agreement.[5]

The resulting arbitration proceedings on the merits were completed in September 2017. Due to Rain's earlier settlement with both ReCon and XL Specialty, no one opposed Rain's arbitration proceeding on the merits as the Insurers were not parties to the arbitration. In effect, there was nothing left to "arbitrate," as

---

[4] The American Arbitration Association Construction Industry Arbitration Rules and Mediation Procedures, R-7(a) provides that "[i]f the parties are unable to agree … to the joinder of parties to an ongoing arbitration, the AAA shall directly appoint a single arbitrator (hereinafter referred to as the R-7 arbitrator) for the limited purpose of deciding" whether the parties should be joined.

[5] With regard to the movant's burden, the R-7 Arbitrator explained:

> Arbitration as an alternative dispute resolution device is radically different from state or federal litigation. Again, for knowledgeable attorneys who are part of this case, it is unnecessary to recite all of those differences, but the admission of "hearsay" evidence and no significant right of appeal are two noteworthy differences. Therefore, to compel a non-signatory party to arbitration out of the regular State or Federal court systems and into arbitration should require a very, very high burden of proof. Counsel for "Rain" filed an outstanding argument, but the jurisprudence and the rules and posture of these parties were too difficult to surmount.

Rain had already settled with ReCon and XL Specialty, and the Insurers were not proper parties to the arbitration proceedings. Nevertheless, Rain proceeded against an "empty chair" and presented expert testimony regarding the nature of expediting and sequencing services performed within the construction context. No evidence was able to be put forth by the Insurers. The Arbitrator rendered an award in favor of Rain in October 2017, noting that though the claim was based on purchase orders tied directly to the original Service Contract between Rain and Recon, "[t]he purchase order[s] did not articulate any of the duties that were to be performed, nor who was to perform them." The Arbitrator referenced testimony of Tom Finnegan, Rain's expert in industrial construction, who explained that an expeditor, such as ReCon in this matter, has a standard of care "to ensure that equipment is delivered to the site in a timely and error free manner in order to maintain the construction schedule." Mr. Finnegan opined that ReCon failed to perform that function in this instance.

The Arbitrator ordered that ReCon pay Rain $3,388,707.00 as a principal sum, $638,933.74 in interest, and $402,764.00 in attorney fees.

The Arbitrator did not mention that ReCon essentially had the same legal obligations under contract law. *See* La.Civ.Code art. 1983 ("Contracts have the effect of law for the parties and may be dissolved only through the consent of the parties or on grounds provided by law. Contracts must be performed in good faith."). *See also Lobell v. Rosenberg*, 15-0247 (La. 10/14/15), 186 So.3d 83; *Clovelly Oil Co., LLC v. Midstates Petroleum Co., LLC*, 12-2055 (La. 3/19/13), 112 So.3d 187; *Ledet v. Campo*, 12-1193 (La.App. 3 Cir. 3/6/13), 128 So.3d 1034.

In April 2018, Rain filed a Motion to Confirm Arbitration Award in the Civil District Court in New Orleans. At that point, the Insurers appeared as Intervenors,

attempting to file motions in opposition to the confirmation of the arbitration award. The trial court determined, however, that the Insurers lacked procedural capacity to file those motions, rendering the filings moot. The Civil District Court confirmed the arbitration award against ReCon by August 2018 judgment, notwithstanding that ReCon had already settled with Rain. The Insurers were not and could not have been named in that judgment. The Insurers nevertheless appealed the rejection of its intervention and the confirmation of the award. The Fourth Circuit Court of Appeal affirmed, explaining that the Insurers had "successfully opposed joinder to the arbitration. As a result, the [I]nsurers were not parties to the arbitration and did not have procedural capacity to later file motions in the judicial proceeding to confirm Rain's arbitration award." *Rain CII Carbon, L.L.C. v. ReCon Eng'g, Inc.*, 18-0916, p. 6 (La.App. 4 Cir. 5/1/19), 270 So.3d 785, 789. The Louisiana Supreme Court denied writs. *See Rain CII Carbon, L.L.C. v. ReCon Eng'g, Inc.*, 19-00853 (La. 9/24/19), 279 So.3d 931.

Rain thereafter filed a Petition for Garnishment in the Orleans Parish Civil District Court against the Insurers based on the arbitration award. That petition apparently remains pending.

As the arbitration award moved through that confirmation process, the Insurers returned to the Fourteenth Judicial District and filed exceptions of no right of action in response to Rain's Fourth Supplemental and Amended Petition, which sought to restate all of Rain's claims as "negligence" claims such that the direct action statute, La.R.S. 22:1269, would apply. The Insurers urged the trial court to reject Rain's "repackaging" of the earlier contractual claims rejected by the trial court. Rain opposed the exceptions of no right of action, filing an exception of res judicata and claiming that the arbitration award precluded re-litigation of whether

8

the cause of action against ReCon sounded in tort, even though the Insurers were not parties to the arbitration. Rain asserted in its exception that the "Arbitration Award awarded Rain $4,430,404.74 solely on tort claims limited to negligent expediting and sequencing[,]" thus requiring the denial of the Insurers' exceptions of no right of action and the granting of Rain's exception of res judicata.

Rain contemporaneously filed a Fifth Supplemental and Amended Petition as a restatement of its earlier four petitions. Rain continued to urge that its cause of action is based in negligence for breach of the standard of care for expediting and sequencing services and that the subject duties are not governed by contract but by negligence principles. Rain succinctly stated that its "cause of action against ReCon sounds in tort." Rain further alleged "these duties of expeditors and sequencers are not professional engineering duties and do not require an engineering degree or any engineering licenses or credentials." It therefore sought a judgment "for, and limited to, Rain's tort claims against ReCon and ReCon's negligence[.]" Rain further included a prayer for declaratory judgment indicating that "Insurers are obligated under their respective Policies to provide coverage to Rain as the insured under the Policies" as well as a judgment against all defendants, in solido, for all damages caused to it.

The Insurers responded with a Motion to Strike the Fifth Supplemental and Amended Petition due to purported procedural errors under La.Code Civ.P. arts. 1151 and 1155. More substantively, they also filed a Motion to Strike Rain's Exception of Res Judicata by which they noted that Rain lodged its exception while in the posture of a plaintiff. The Insurers pointed out that La.Code Civ.P. art. 921 provides for the exception as "a means of defense … used by the defendant … to retard, dismiss, or defeat the demand brought against him." The Insurers thus

contended that Rain, as plaintiff, could not file an exception when the Insurers, as defendants, had not filed a demand against it.

Before the motions to strike were heard, the Insurers filed exceptions of no right of action to the Fifth Supplemental and Amended Petition again urging that the underlying facts had not changed since the initial petition and that any cause of action alleged was contract-based, a cause of action previously dismissed. The Insurers also filed cross-claims, counterclaims, and reconventional demand by which they sought declaratory judgment against Rain and ReCon declaring that their respective policies afforded no coverage for the asserted claims.

The trial court considered certain filings surrounding the Fourth and Fifth Supplemental and Amended Petitions in August 2018. By its resulting September 2018 judgment, the trial court granted the Insurers' exception of no right of action as to the fourth petition, dismissing Rain's claims asserted without prejudice, but denied the Insurers' Motion to Strike the Fifth Supplemental and Amended Petition. The trial court permitted Rain's filing of the fifth petition and also granted it "leave to file a further amended Petition on or before September 27, 2018."

Rain then filed a Sixth Supplemental, Amended and Restated Petition, along with sizeable attachments, by that designated filing date and stated that the new filing "replace[d]" all allegations of the prior five petitions. Rain again styled its claim as exclusively tort based, explaining that it limited its claim to its allegations of negligence in expediting and sequencing. Rain set forth the chronology of the arbitration award, asserted that it pursued only tort claims in that proceeding, and contended that the now confirmed arbitration award for negligent expediting and sequencing "conclusively establishes that Rain has a tort claim for negligent expediting and sequencing." As ReCon's assignee under the terms of its settlement

with ReCon and XL Specialty, its professional liability insurer, Rain asserted claims under the subject policies and alleged that "ReCon's fault and negligence in the services it performed for Rain are covered" thereunder. Rain denied that it was pursuing a contract claim and specifically stated that it was not pursuing claims related to ReCon's engineering or estimating services.

Rain maintained its claim for monetary damages only, equating that loss to "property damages" under the terms of the policies. Specifically, it prayed for a judgment in the amount of the Arbitration Award, a declaratory judgment that the Arbitration Award precludes relitigating the issue of whether it has a cause of action for negligent expediting and sequencing, and a declaratory judgment that the Insurers are liable for amounts due under the policies for post-loss claims and causes of action arising out of the project.

The Insurers again responded to the Sixth Supplemental, Amended and Restated Petition with exceptions of no right of action and reconventional demands for declaratory relief. The Insurers pointed to definitions and exclusions in their respective policies as barring coverage and sought a declaration of non-coverage. Ultimately, all parties filed motions for summary judgment on the policy coverage issue.

Rain, however, questioned whether consideration of the Insurers' motion for summary judgment was premature, as the issue of policy coverage only arose in the Insurers' most recent filings. It specifically noted that, as a consequence, it had only recently issued broad-based discovery for claims files and internal communications regarding coverage due to its claims of coverage and bad faith.

The trial court denied Rain's attempts to continue the hearing due to pending discovery requests and conducted a hearing in January 2019 at which the parties

offered extensive argument and voluminous documentary evidence. The trial court then rendered full relief to the Insurers as it: 1) denied Rain's motion for summary judgment and motion for declaratory judgment on the issue of policy coverage; 2) granted the Insurers' motion to strike Rain's exception of res judicata and, in turn, denied Rain's corresponding exception of res judicata; 3) granted each of the Insurers' exceptions of no right of action to the Sixth Supplemental, Amended, and Restated Petition; 4) denied Rain's exceptions of no right of action, no cause of action, and lis pendens to the reconventional demands; 5) granted each of the Insurers' motions for summary judgment; and 6) denied Rain's alternative request to voluntarily dismiss its claims due to garnishment proceedings it had filed against the Insurers in Orleans Parish.

In light of the grant of the Insurers' exception of no right of action and summary judgment entered in favor of the Insurers, the resulting judgment dismissed all of Rain's claims against them with prejudice. It further declared that the subject policies afforded no coverage and that the Insurers have no duty to indemnify or defend ReCon against Rain's claims.

Rain appeals, assigning the following as error:

> 1. The District Court legally erred in granting the Insurers' motions for summary judgment without allowing Rain an opportunity for adequate discovery. The District Court further erred by denying Rain's motion to continue the hearing on the Insurers' motions for summary judgment and denying as moot Rain's motion to compel.

> 2. The District Court legally erred in denying Rain's exceptions of *res judicata* and granting the Insurers' motions to strike Rain's exceptions of *res judicata* because Rain has a valid, final judgment that precludes the Insurers from relitigating the validity of Rain's tort claims against ReCon.

> 3. The District Court legally erred in granting the Insurers' exceptions of no right of action and denying Rain's exceptions to the Insurers' reconventional demands because Rain pleaded tort claims

against ReCon and claims against the Insurers for post-loss insured liability and bad faith.

4. The District Court legally erred in granting the Insurers' motions for summary judgment and denying Rain's cross-motion for summary judgment, based solely on the District Court's granting of the Insurers' exceptions of no right of action, because Rain's claims against ReCon are covered by the Insurers' Policies.

5. The District Court legally erred in denying Rain's motion to voluntarily dismiss its claims against the Insurers without prejudice because Rain has the right to voluntarily withdraw its claims against the Insurers without prejudice and pursue its claims against the Insurers in a more proper venue.

## LAW AND DISCUSSION

*Post-Lodging Filings*

As addressed at oral arguments, the Insurers filed a Motion to Strike Rain's reply brief, suggesting that a request to exceed the page limitations for the brief was untimely under Uniform Rules—Courts of Appeal, Rule 2-12.2. That motion was referred to the merits for review by this panel. Rain subsequently filed a Motion for Leave to File Corrected Reply Brief and asked this court to "disregard" its previously filed Motion for Leave to File Reply Brief in Excess of Page Limitations. The Motion to Strike is therefore denied as moot. Rain's motion to file its corrected brief is granted.

*Motion to Continue*

Rain first argues that the trial court erred in denying its motion to continue the hearing on the motion for summary judgment as it did not have time for adequate discovery of materials related to insurance coverage. Rain argued that although the matter had been pending for years, the Insurers did not raise the issue of policy coverage until 2018. Rain urged that it was met with resistance in its discovery demands and with assurances that the materials would be produced prior to the

hearing set for summary judgment. Thus, Rain maintains, summary judgment was entered despite the fact that it did not have "an opportunity for adequate discovery" as required by La.Code Civ.P. art. 966(A)(3).

Louisiana Code of Civil Procedure Article 966(C)(2) permits a trial court to order a continuance of the hearing "[f]or good cause shown[.]" A trial court's determination as to whether a continuance should be granted is reviewed on appeal for abuse of discretion. *Newsome v. Homer Mem'l Med. Ctr.*, 10-0564 (La. 4/9/10), 32 So.3d 800; *Colson v. Colfax Treating Co., LLC*, 17-913 (La.App. 3 Cir. 4/18/18), 246 So.3d 15.

In denying Rain's suggestion at the summary judgment hearing that the matter was not "ripe" for consideration, the trial court squarely rejected Rain's contention that further discovery was required before proceeding. Importantly, La.Code Civ.P. art. 966(A)(3) provides not only for "adequate discovery" as may be deemed necessary by an opposing party, but accounts for a party's "opportunity" for such discovery. In denying Rain's request for a continuance, the trial court specifically addressed both aspects of that provision and explained:

> Just briefly … so we can have a record. One is, I agree with Mr. Siegel [Counsel for Catlin] and the insurers in this matter. I think what is before the Court to make a determination, I'm not convinced that additional discovery would really be of assistance.
>
> I'm not practicing for you, and I'm certainly not telling you how to take care of your business, but I just don't think I've heard enough to make me believe that any of that would be critical or really impactful on a decision to be made by the Court.
>
> Secondly, you stand here today also in the shoes of ReCon who is the insured in this matter. And the information that you want from the - - at least a correspondence between the insurers and ReCon - - which I think could be impactful - - I think you have the ability or had that long before you requested it from the insurance companies.
>
> ….

14

Based on those two assessments at this time to delay it any further for discovery purposes, I'm denying that at this time.

Rain argued to the trial court, as it does here, that proceeding with the January 3, 2019 hearing on the motions for summary judgment deprived it of its opportunity to conduct discovery on policy coverage issues, including investigation of communications between ReCon and the Insurers, claims files, and information surrounding any reservations of rights. This necessary discovery, Rain contends, relates both to its own claims of coverage and to the Insurers' respective defenses.

Proceeding with the hearing, Rain argues, contravened the concept that all parties be afforded a fair opportunity to present their case prior to the entry of summary judgment. *See Simon v. Belaire*, 11-442 (La.App. 3 Cir. 10/5/11), 74 So.3d 1250, *writ denied*, 11-2454 (La. 2/3/12), 79 So.3d 1027. Rain equates its outstanding discovery requests with those found critical in *Broussard v. Winters*, 13-300, p. 5 (La.App. 3 Cir. 10/9/13), 123 So.3d 902, 906, a case in which this court reversed summary judgment entered in favor of an insurer upon a finding that "discovery was incomplete and inadequate." Like this case, the plaintiff in *Broussard* cited the necessity of outstanding discovery responses in pursuit of his coverage claim. *Id.* In finding the summary judgment proceedings premature, the panel particularly remarked on the trial court's failure to rule on the plaintiff's motion to compel discovery and found justice "best served by compelling [the insurer] to cooperate in the requested discovery." *Id.*

This case differs. Rain cites the relevant starting point of discovery as the point of the Insurers' defenses in 2018. However, Rain alleged coverage and named the Insurers as defendants in the May 2016 Third Supplemental and Amended Petition, attaching the policies to the petition at that time and continuing to do so

15

through the proceedings over the years. It maintained its position of coverage through the Fourth Supplemental and Amended Petition in November 2016, the Fifth Supplemental and Amended Petition in August 2018, and the Sixth Supplemental, Amended and Restated Petition in September 2018. The Insurers resisted their involvement throughout. As remarked upon by the trial court, Rain was in possession of the policies at least since March 2016 and, by January 2017, stood in the shoes of ReCon due to the assignment of the latter's interest as a result of its settlement with ReCon and XL Specialty.[6] There is, however, no indication that Rain sought the contested documents or pursued discovery post settlement with ReCon and XL Specialty during the entire January 2017 to November 2018 time period. Given that earlier "opportunity" to seek the subject documents, the trial court reasonably concluded that a continuance was not warranted.

Perhaps more importantly, the trial court further discussed whether the outstanding discovery requests were meaningful ones and whether Rain had been afforded an opportunity for "adequate discovery." On this point, it is clear that the parties' respective arguments regarding coverage are largely resolved by reference

---

[6] The "Terms and Conditions" of the January 2017 settlement and assignment of interest with ReCon and XL Specialty, its professional liability carrier, indicate that:

1.    **Assignment.** ReCon hereby transfers and assigns to Rain CII all proceeds, payments, coverage, benefits, and amounts due under the Policies for all Post-Loss Claims and causes of action which arose out of the Project as defined above. As part of this Assignment, ReCon agrees that Rain CII may appear and is the proper person in interest to appear and to assert claims for proceeds, payments, coverage, benefits, and amounts due under the Policies against First Financial, Chartis, Illinois National, Catlin, and Alterra and against any other of its insurers (collectively, the "Insurers"), except XL Specialty Insurance Company. In addition, ReCon hereby transfers and assigns any and all claims it has against the Insurers, including without limitation for bad faith and/or extracontractual damages and penalties under the laws of any state (e.g., claims under Louisiana Revised Statutes §§ 22:1892 and 22:1973, Louisiana Civil Code articles 1997 and 1983, and any other applicable statutes or jurisprudence for claims arising out of the Project). For avoidance of doubt, this Assignment does not assign Rain CII the Policies or any interest in the Policies.

to the contractual terms of the policies in question, the petitions, and the law. Rain admittedly possessed the subject policies for a considerable time period.

As the trial court noted, Rain does not indicate how the claim files and surrounding correspondence would further its coverage claim or permit it to further rebut the Insurers' defenses. Reference to Rain's motion to continue indicates that it represented that it had "requested information directly relevant to the Insurers' Motions for Summary Judgment" and explained that:

> For example, Rain has requested correspondence between the Insurers and ReCon, including correspondence regarding coverage. This is important because if Insurers did not send a reservation of rights letter each of the exclusions or coverage defenses now raised in its summary judgment motion, the Insurers have waived the coverage defenses under the principles set forth in Steptore v. Masco Const. Co., Inc., 93-2064 (La.8/18/94), 643 So.2d 1213, 1216. In addition to all correspondence between ReCon and the Insurers, Rain also requested, for example, the claims file, which has a direct bearing on the notice and cooperation clause arguments in the Insurers' Motions for Summary Judgment.

Even accounting for these two examples purportedly relating to the Insurers' exclusion defenses, Rain did not account for how the outstanding discovery related to the primary issue of whether the policies afforded coverage for the type of claim and damages sought, the relevant information for which is included in the terms and conditions of the policies themselves.

Additionally, the trial court's determination as to the "adequacy" of discovery also undermines Rain's contention that the trial court erred in failing to recognize the Insurers' earlier assurance of timely discovery responses. Rain points out that in *Suarez v. DeRosier*, 17-770 (La.App. 3 Cir. 3/7/18), 241 So.3d 1086, this court found that a trial court abused its discretion in denying a motion for continuance in the face of a party's repeated representations that they would comply with discovery. The failure to do so, this court reasoned, prevented the plaintiff "from obtaining adequate

17

discovery and from meeting the burden of production required of a party opposing a motion for summary judgment." *Id.* at 1093. This record, however, does not demonstrate the type of repeated promises and delay documented in *Suarez*. The trial court in this case remarked upon the resolution of the issue before it by reference to the actual contractual terms of the policies as seen above. In contrast, the denial of the motion to continue in *Suarez* was found to be an abuse of discretion "because discovery was not sufficient for summary judgment." *Id.*

Following review, we find no abuse of the trial court's discretion in its denial of Rain's motion to continue the summary judgment hearing.

*Res Judicata*

Rain next questions the trial court's rejection of its res judicata claim, asserting that the confirmed arbitration award constitutes a final judgment prohibiting the Insurers from relitigating the validity of what Rain contends was a tort claim against ReCon. The Insurers point out in response that they were not parties to that arbitration proceeding or that award.

The doctrine of res judicata is provided by La.R.S. 13:4231, which states:

> Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
>
> (1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
>
> (2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
>
> (3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any

issue actually litigated and determined if its determination was essential to that judgment.

A second action is therefore precluded when:

(1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of the final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation.

*Chauvin v. Exxon Mobil Corp.*, 14-0808, pp. 5-6 (La. 12/9/14), 158 So.3d 761, 765 (citing *Burguieres v. Pollingue*, 02-1385 (La. 2/25/03), 843 So.2d 1049). A trial court's determination of the res judicata effect of a prior judgment is reviewed de novo on appeal as it resolves a legal question. *See Gladney v. Anglo-Dutch Energy, L.L.C.*, 19-93 (La.App. 3 Cir. 10/2/19), 280 So.3d 964. Factual findings underlying that determination, however, are reviewed for manifest error. *Id.*

Here, the trial court rejected Rain's exception and stated:

As to Plaintiff's Exception of Res Judicata and Insurers' Exceptions to the fifth and six supplemental, and as it relates to the ruling suggested by Mr. Hilbert and Mr. Kottle [counsel for Rain]. By my way of thinking, the arbitration was brought on and compelled by the contract between Rain and ReCon. It was a result of the contract.

Now, the fact that at some point subsequent to the initial referral an arbitrator determined that it was a tort claim as opposed to a contractual claim, I think is not something that's binding on this Court.

I believe what I've been told also is that that arbitration award has been confirmed by a district court judge in Orleans Parish, which is where the arbitration took place.

And let me be clear; I want the record to reflect that I'm not suggesting any disrespect or necessary disagreement with any ruling by another judge that felt that he or she had the appropriate jurisdiction to make a ruling on the matter before him or her.

But my position is, that that is not res judicata. That was not a determination that is binding on this Court as to whether or not Rain in any of the petitions has filed a claim that sounds in tort. It just hasn't happened, and I stand by that position.

We do not disturb that ruling. As noted, the Insurers were not parties to the arbitration ruling. In fact, by "R-7 Arbitrator's Decision" of March 13, 2017, the R-7 Arbitrator determined that, as non-signatories to the underlying arbitration agreement, the Insurers could not be compelled to join the proceeding. Also, the trial court in this case appropriately focused on the issue resolved by arbitration in comparison to that raised by the latter petitions. In particular, the trial court identified the arbitration as necessarily "brought on and compelled" by the underlying contract. Although the Arbitrator referenced duties related to expediting and sequencing outside of the contract, its ruling was dependent on the contract. In fact, the Arbitrator pointed to the arbitration provision in awarding attorney fees.[7] Such an award was not possible under a tort-based theory since attorney fees must be authorized by either statute or provided by contract. *See Langley v. Petro Star Corp. of La.*, 01-0198 (La. 6/29/01), 792 So.2d 721.

Finally, to the extent the Arbitrator referenced duties surrounding the expediting and sequencing aspects of ReCon's work, those remarks must be viewed within the larger context of the proceeding. In particular, the Arbitrator's observations related to allegations contained within Rain's "Second Amended and Restated Statement of Claims." That claim was submitted in August 2017, a date following the R-7 Arbitrator's determination that the Insurers could not be joined due to their non-signatory status. Accordingly, despite the Arbitrator's reference to

---

[7] The Arbitration Award indicates that:

The purchase order contains an arbitration provision which provides in part:

The prevailing party shall be entitled to attorney fees with interest from date of breach at the lower of 2% over the prime rate of Citi Bank or the highest non-usurious rate allowed by law.

duties not described within the contract, the trial court appropriately remarked that it was not required to include those references within the scope of the arbitration award as suggested by Rain, as "that was not a determination that is binding on this Court[.]" We agree.

We further point out that the finality of the arbitration award is not properly at issue here. That award was confirmed in the Civil District Court of Orleans Parish and affirmed on appeal. *See Rain CII Carbon, L.L.C. v. ReCon Eng'g, Inc.*, 18-0916 (La.App. 4 Cir. 5/1/19), 270 So.3d 785, *writ denied*, 19-0853 (La. 9/24/19), 279 So.3d 931. Rain instead questions the trial court's ruling regarding whether duties associated with a tort-based claim were part of that judgment. The trial court determined they were not, and we maintain and affirm its ruling. The Insurers were not parties to the arbitration proceeding, and no award made in that proceeding is therefore binding on them. *See* La.R.S. 13:4231. *See also Chauvin*, 158 So.3d 761.[8]

*Right of Action*

Rain next questions the maintaining of the Insurers' exceptions of no right of action and the denial of Rain's corresponding exceptions to the Insurers' reconventional demand for a declaratory judgment by which the Insurers sought a determination that there was no policy coverage for Rain's demands.

The exception of no right of action serves to question whether a plaintiff belongs to the class of persons having a cause of action for the claim asserted in the suit. *See Antonio Le Mon v. Nat. Football League*, 19-1264 (La. 9/6/19), 277 So.3d 1166 (citing *Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*, 10-2267 (La.

---

[8] We do not further discuss Rain's related argument that the Insurers are bound due to a closely aligned identity with ReCon. *See Burguieres*, 843 So.2d 1049. Rather, the determination that the Insurers' policies do not afford coverage for the subject conduct pretermits further discussion of that argument.

10/25/11), 79 So.3d 246). While all well pleaded facts in the petition must be accepted as true for purposes of the exception, the parties may present evidence in support of or in opposition to the question of whether no right of action applies. *Eagle Pipe*, 79 So.3d 246. *See also* La.Code Civ.P. art. 931.

Typically, an exception of no right of action involves a question of law and appellate review is de novo. *Eagle Pipe*, 79 So.3d 246. When evidence is introduced in support of or in opposition to the exception, however, a trial court's findings of fact are subject to the manifest error-clearly wrong standard of review. *See London Towne Condo. Homeowner's Ass'n v. London Towne Co.*, 06-401 (La. 10/17/06), 939 So.2d 1227. In consideration of a trial court's ruling on such an exception, the appellate court considers "whether the particular plaintiff has a right to bring the suit and is a member of the class of persons that has a legal interest in the subject matter of the litigation, assuming the petition states a valid cause of action for some person." *Le Mon*, 277 So.3d at 1167 (citing *Badeaux v. Southwest Computer Bureau, Inc.*, 05-0612 (La. 3/17/06), 929 So.2d 1211).

In addressing the exception of no right of action as it related to Rain's fifth and sixth petitions,[9] the trial court explained:

> I find that the no right of action is granted as it relates to the fifth supplemental and amended petition.
>
> Now, the sixth supplemental and amended petition, where Rain has unequivocally, at least in that position [sic], has indicated they have abandoned the contract issue between Rain and ReCon, and are solely proceeding under the theory that it is a tort claim, alleging the negligent expediting and sequencing of ReCon.
>
> I recognize that a petitioner has the unequivocal right to make whatever claims they want to make that they feel that they can sustain and that would allow them to prevail.

---

[9] Rain explained in its "Sixth Supplemental, Amended, and Restated Petition" that this final petition replaced "all of the allegations" in its five prior petitions.

I also recognize that the allegations made in that sixth amended and supplemental petition reflect that based on the representations of experts in an arbitration proceeding that is not the issue of this court, based on those claims and affidavits that the actions or inactions of ReCon sound in tort.

That is not the belief of this Court, and that is not how I believe that states a sufficient ground for a tort claim. Again, recognizing that everything that ReCon was claimed to have done or not done, emanates from the contract that existed between Rain and ReCon. I just don't buy it. I just don't see it.

Peremptory exception of no right of action is granted. Now, which means that there is no coverage under any of the insurance policies. So the motions for summary judgment on 21, 22, 23, 24, 25 as it relates to Chartis, Illinois, First Financial, Catlin, and Alterra, are granted.

Rain correctly observes that the allegations of a plaintiff's petition must be taken as true for purposes of examination of an exception of no right of action. *Citing Key W. End, Inc. v. Werner*, 01-861 (La.App. 5 Cir. 12/12/01), 806 So.2d 710. Important here, however, is the further concept that the allegations of fact must be taken as true "in the absence of evidence to the contrary." *Id.* at 713. The evidence in this case is voluminous. Rain's Sixth Supplemental, Amended, and Restated Petition, alone, contains well over seven hundred pages of attachments.

Central to the trial court's determination, both as to the exceptions of no right of action, the motions for declaratory judgment, and the motions for summary judgment, is its observation that, despite Rain's conclusory styling of its claim as one in tort, the claim arose solely from ReCon's contractual obligations. Not to be deterred, Rain forcefully argues that the trial court's determination ignores jurisprudence indicating that the same set of facts may provide a plaintiff with remedies in both contract and tort. *Citing Corbello v. Iowa Prod.*, 02-0826 (La. 2/25/03), 850 So.2d 686; *Borden, Inc. v. Howard Trucking, Co.*, 454 So.2d 1081

23

(La.1983); *FIE, LLC v. New Jax Condo Ass'n, Inc.*, 16-0843, 17-0423 (La.App. 4 Cir. 2/21/18), 241 So.3d 372, *writs denied*, 18-446, 18-449 (La. 5/25/18), 243 So.3d 544, 545; *Ridge Oak Dev., Inc. v. Murphy*, 94-0025 (La.App. 4 Cir. 6/30/94), 641 So.2d 586, *writ denied*, 94-2565 (La. 12/16/94), 648 So.2d 389.

While that larger concept is accurate, ReCon's duty to perform work at Rain's facility is based on contract and purchase orders, not by separate, delictual obligation. Rain does not identify two separate courses of conduct. All conduct in this case arises out of and was based on the contract and purchase orders. In *Corbello*, 850 So.2d at 708 (quoting *Fed. Ins. Co. v. Ins. Co. of N. Am.*, 262 La. 509, 512, 263 So.2d 871, 872 (1972)), the supreme court recognized the "long-standing rule" that when "'a party has been damaged by the conduct of another arising out of a contractual relationship, the former may have two remedies, a suit in contract, or an action in tort, and that he may elect to recover his damages in either of the two actions.'" However, the supreme court explained that, even in the presence of such a claim, it found "it questionable whether there were in *fact two separate conducts by [the defendant] or whether [the alleged conduct] falls within the failure to clean up or restore the property in violation of the contractual agreement to do so*." *Id.* (emphasis added).

In *Borden*, 454 So.2d 1081, the plaintiff contracted with the defendant to transport a compressor to a repair facility. During the journey, the defendant's vehicle crashed, damaging the compressor and causing a loss in production at the plaintiff's facility. The plaintiff claimed damages related to repairs to the compressor and to losses associated with the delay in the compressor's operation. Although the actual transport of the compressor was found to have arisen out of the underlying contract to transport, the plaintiff's cause of action in tort was based on

the negligence of the vehicle's driver transporting the compressor. On that point, the supreme court explained that the defendant "was at fault for the damage suffered by Borden based upon the negligence of [the defendant's] employee. The [defendant's] vehicle drove off the traveled roadway and turned over in a one vehicle accident." *Id.* at 1083. The driver's operation of the vehicle, causing actual, physical damage to the plaintiff's property, was a separate course of conduct from the breach of the contract, which related merely to delivery of that property. Additionally, *Borden* involved duties generally owed by a carrier to a shipper pursuant to the "Obligations of carriers and watermen" as provided by La.Civ.Code art. 2751. No such separate codal obligation is identified in this case.

Similarly in *FIE*, 241 So.3d 372, the plaintiff property owner sought loss of use damages from a condominium association due to faulty roof repairs. Beyond the contractual aspects of the claim related to the association's by-laws, the court identified separate, legal obligations, arising under the Louisiana Condominium Act, La.R.S. 9:1123.107, and La.Civ.Code art. 2317.1, permitting recovery for "[the defendant's] negligent efforts to repair the roof." *Id.* at 392. *FIE* thus involved obligations distinct from those required by the by-laws.

In this case, all duties flowed from ReCon's contractual duties created by ReCon's engagement. The alleged negligent conduct, failure to properly expedite and sequence, is one and the same with its contractual obligations to do so. There are no distinct tortious acts not otherwise included in the general duties provided by contractual law. *See* La.Civ.Code art. 1983.

Further, the attachments to Rain's petition are consistent with the trial court's determination that Rain's claims are contractual in nature, despite Rain's assertion that its engineering contracts with ReCon did not specify the duties associated with

expediting and sequencing services. Specifically, Rain included ReCon's actual expediting reports, which indicate that the expediting services were reported as part of "ReCon Engineering project #10229004." Additionally, the expert report of Tom Finnegan, presented to the Arbitrator, indicates that "Rain engaged ReCon Engineering, Inc. and ReCon Management Services, Inc. (collectively "ReCon") to design the project and perform additional services on behalf of Rain … *As part of its duties, ReCon acted as equipment expeditor on behalf of Rain*." (Emphasis added.).

Given that documentation, the trial court fairly read the subject duties as arising within the overall contracted services, regardless of how Rain characterizes its cause of action, and regardless of whether the expediting and sequencing services were specified in that initial contract. The purchase orders clearly and unequivocally reference the ReCon Engineering Project.

Through six petitions, the alleged facts have essentially remained the same. In fact, Rain's claims had a sufficient contractual basis to compel arbitration, a purely contractual concept. No additional claims of separate tortious conduct against ReCon so as to trigger coverage by the Insurers exist here. Instead, only Rain's characterization of its claim as "tort based" has changed.

We further find no merit in Rain's assertion that the trial court erred in granting the exception of no right of action given Rain's status as ReCon's assignee pursuant to the settlement agreement. While Rain presented itself in that posture in its petition, it further claimed ReCon was covered for the subject damages under the Insurers' policies. It did so by alleging that its "loss of money" constituted "property damage" under the terms of those policies.

26

Policy Coverage – "Property Damage"

Each of the policies provides coverage for "property damage," which is defined to include (1) physical injury to tangible property, including all resulting loss of use of that property, and (2) loss of use of tangible property that is not physically injured.

Rain has consistently argued that its loss of use of its facility and loss of money related to its delayed operation constituted loss of use of tangible property so as to constitute "property damage" by the policies' second definition, "loss of use of tangible property that is not physically injured." Rain cites *Dietrich* for this proposition, a case equating "tangible property" with "corporeal property" and one involving "money" as the subject tangible property. Like the trial court, we do not extend the reasoning of *Dietrich* here.

In *Dietrich*, 551 So.2d 64, the plaintiff filed suit against her employer, arguing that the employer was liable to her due to its failure to enroll her in its health and disability coverage, causing her to lose money due to lack of health insurance coverage. The employer, in turn, sought coverage for the suit from its general liability insurer. That policy's definition of "property damage," like here, included the "loss of use of tangible property which has not been physically injured[.]" *Id.* at 66. The first circuit concluded that, although any right to benefits that the plaintiff would have received under the policy were intangible, any payable benefits she would have been due constituted "tangible property, i.e. money." *Id.* *Dietrich* involved identifiable, quantifiable health benefits that would have been payable under the employer's healthcare policies.

The Insurers reference sources that they contend reflect a general rejection of *Dietrich*'s reasoning. For example, in *Lamar Advertising Co. v. Continental*

*Casualty Co.*, 396 F.3d 654, 662 (5th Cir. 2005) (citing *Selective Ins. Co. of Se. v. J.B. Mouton & Sons, Inc.*, 954 F.2d 1075 (5th Cir. 1992)), the Fifth Circuit refused application of *Dietrich* to the matter before it and stated, in part that "this court has previously rejected the notion that, under Louisiana law, the loss of possible future income or profits, or the loss of the use of that income, constitutes a loss of *tangible* property." The Insurers further point to the Louisiana Civil Law Treatise on Insurance Law and Practice, which includes citation to *Dietrich*, in opining that:

> Policy definitions of property damage generally require injury to or loss of use of "tangible" property. While some courts have given "tangible" an expansive interpretation, the better reasoned decisions draw a clear distinction between loss of use of tangible property, which are covered, and intangible property losses, which are not covered.

WILLIAM SHELBY MCKENZIE AND H. ALSTON JOHNSON, III, 15 LA. CIV. L. TREATISE, INSURANCE LAW & PRACTICE, § 5.4 (4th ed.) (footnotes omitted). Rain discounts whether the sources cited by the Insurers undermine application of *Dietrich*, noting that these cases cannot be viewed as overruling the first circuit case and that it therefore remains good law. Despite Rain's observations, however, we find above find this case distinguishable from *Dietrich* due to the attenuated, speculative nature of the loss now claimed. We find instead the reasoning of *Lamar Advertising*, 396 F.3d 654, and the McKenzie and Johnson treatise to be persuasive.

*Summary Judgment*

Insurers' Motions for Declaratory Judgment and Summary Judgment

Rain alternatively contends that factual issues may remain as to whether the expediting and sequencing work complained of in its final two petitions arose from the contract or were additional duties due to post-contract communication. However, the factual circumstances surrounding the expediting and sequencing services have remained the same throughout the six-year course of this litigation. The

28

circumstances of those services were challenged through the arbitration process. Only Rain's characterization of its claim, rather than actual facts, has changed. The characterization of the claim, for purposes of Rain's motion for summary judgment does not create the type of genuine issue of material *fact* anticipated by La.Code Civ.P. art. 966. *See also Balthazar v. Hensley R. Lee Contracting, Inc.*, 16-0920, p. 9 (La.App. 4 Cir. 3/15/17), 214 So.3d 1032, 1041 ("A material fact … is not the same as a petitioner's theory of recovery. A material fact *supports* a petitioner's theory of recovery."), *writ denied*, 17-0777 (La. 9/22/17), 228 So.3d 741.

In questioning the trial court's granting of the Insurers' motions for declaratory and summary judgment, Rain contends that the trial court's ruling was based solely on its granting of the Insurers' exception of no right of action. On this point, it references the trial court's reasons, quoted above, that combine its remarks on the exception of no right of action with its granting of summary judgment in favor of the Insurers as follows: "Peremptory exception of no right of action is granted. Now, which means that there is no coverage under any of the insurance policies. So the motions for summary judgment … are granted."

The trial court's reasons as a whole, however, do not indicate that the trial court's ruling on the summary judgment was dependent on the question of the existence of a right of action as suggested by Rain. Instead, the trial court's statement reflects the narrow question of whether Rain's petition alleged a right to recover under the policies and, in turn, whether those alleged facts afforded coverage under the policy language. Chiefly, however, we point out that this argument as to the basis for the trial court's ruling on the motions for summary judgment is without consequence as it is well settled that a trial court's ruling on a motion for summary

29

judgment is considered de novo on appeal. *See Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So.2d 880.

Policy Coverage – Insuring Agreement

In addition to the determination regarding the "property damage" definition, common to all Insurers, summary judgment was appropriate on a separate basis to First Financial, which offered a CGL policy for the September 1, 2010 through September 1, 2011 policy year and, in turn, Chartis, which offered an excess/liability policy for that same policy year. First Financial points out that the Insuring Agreement of its policy provides that, although it is legally obligated to pay damages due to "property damage," its coverage applies *only if "'property damage' occurs during the policy period*[.]" (Emphasis added.) The Insuring Agreement of the Chartis excess policy provides similarly.

Rain suggests that ReCon's early involvement on the project began in 2010, and its estimating work on the project commenced in August 2011, a period within the policy term. First Financial explains, however, that Rain actually claimed delay damages related to a specific period between May 2012 and December 2012, as estimated by Rain's expert, Mr. Finnegan, in preparation of his report for the arbitration proceeding. The entirety of this period of delay is beyond the First Financial and Chartis policy periods. First Financial's position is consistent with both Rain's allegations regarding damages and Mr. Finnegan's documentation and estimates produced in the arbitration proceeding. The Arbitrator notably repeated Mr. Finnegan's method and estimation of damages in rendering its award. Though both Mr. Finnegan's report and the arbitrator's award are not binding on this court, Rain identifies no other specific acts occurring within the applicable period on the record before us. Accordingly, we find that Rain failed to prove applicability of

either the Insuring Agreement of the First Financial policy or that of Chartis in its role as excess insurer for the 2010-2011 policy year.

For these reasons, we maintain the trial court's rulings on the parties' respective declaratory and summary judgments. Although we recognize that the Insurers have additional policy exclusions arguably applicable to their rejection of coverage, we do not further discuss those claims as advisory.

*Voluntary Dismissal*

Finally, Rain contends that the trial court abused its discretion in denying its motion to voluntarily dismiss its claims against the Insureds without prejudice given pending garnishment proceedings in Orleans Parish. Louisiana Code of Civil Procedure Article 1671 (emphasis added) provides that:

> A judgment dismissing an action without prejudice shall be rendered upon application of the plaintiff and upon his payment of all costs, if the application is made prior to any appearance of record by the defendant. *If the application is made after such appearance, the court may refuse to grant the judgment of dismissal except with prejudice.*

We find no abuse of discretion in the trial court's denial of the request to dismiss. Rain correctly observes that La.Code Civ.P. art. 2416 requires that, in this situation, Orleans Parish is an appropriate venue for garnishment proceedings. However, this case has proceeded in the Fourteenth Judicial District since 2013 with the Insurers named as defendants since 2016. Even on this designated record, the parties present this court with filings filling sixty-one appellate volumes and sixteen volumes of separate exhibits. Most certainly, the application to dismiss is made after an "appearance." We find no abuse of the trial court's discretion to resolve all issues presented, and we hereby affirm the trial court's decision.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed in its entirety.  Costs of this proceeding are assessed to Appellant, Rain CII Carbon, LLC.

**MOTION TO STRIKE REPLY BRIEF DENIED AS MOOT.**
**MOTION FOR LEAVE TO FILE**
**CORRECTED REPLY BRIEF GRANTED.**
**AFFIRMED.**

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

19-403

RAIN CII CARBON, LLC

VERSUS

TURNER INDUSTRIES GROUP, LLC, ET AL.

**Perret, Candyce, J.,  dissents and assigns reasons.**

I respectfully dissent from the majority opinion that affirms the trial court judgment granting all rulings in favor of the Insurers and against Rain.  I find that Rain expressly submitted its tort claims in the arbitration hearing and that the arbitration award was rendered based on negligent expediting and sequencing.  Even though the Insurers were not parties to the arbitration, I find that the Insurers and ReCon's interests are so closely aligned such that the preclusive effect of the arbitration award binds the Insurers.  Because there is a final arbitration award that has been confirmed by the district court in Orleans Parish and affirmed by the Fourth Circuit Court of Appeal, I find that the issue of whether Rain has a valid tort claim has been decided in the arbitration proceeding and thus, is now res judicata.  The motion for summary judgment is therefore an improper collateral attack on an arbitration award that is a final judgment granting damages in a tort claim.

Moreover, I find that Rain has a right of action, standing in the shoes of ReCon, against the insurers.  The trial court erred in granting the Insurers' peremptory exceptions of no right of action because it failed to consider Rain's claims against the Insurers as the assignee of ReCon's claims against the Insurers.

I also find that the trial court erred in granting the Insurers' motion for summary judgment regarding insurance coverage.  As stated by the Louisiana Supreme Court in *Yount v. Maisano*, 627 So.2d 148, 151 (La.1993), "[p]olicies

1

should be construed to effect, not deny, coverage[,]" and "any ambiguity in an exclusion should be narrowly construed in favor of coverage." As also stated by the Louisiana Supreme Court in *Reynolds v. Select Properties, Ltd.,* 93-1480 (La. 4/11/94), 634 So.2d 1180, 1183, a "[s]ummary judgment declaring a lack of coverage under an insurance policy may not be rendered unless no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion exists under which coverage should be afforded." In this case, Rain submitted affidavits and other documentary evidence in opposition to the motion for summary judgment, which I find have created issues of fact precluding summary judgment. Because of this, I find that there are genuine issues of fact that warrant a trial on the extent of damages caused by the negligent expediting and sequencing and whether there is coverage under the insurance policies.

For these reasons, I respectfully dissent from the majority opinion in this matter and would reverse the trial court's judgment granting the Insurers' motions for summary judgment and no right of action and its denial of Rain's Exception of Res Judicata and I would remand this matter to the trial court for further proceedings.